### HOME LIFE & ACCIDENT CO. v. ORCHARD. (No. 619.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 12, 1920. Rehearing Denied Jan. 12, 1921.)

**1. Master and servant ⊂⊃349 — Compensation Act amendment held to give extraterritorial effect to pre-existing insurance policy.**

Where a workmen's compensation insurer contracted to pay in the manner provided by the laws of such states as were in force at the time the policy took effect, or any subsequent amendments thereto, and while the policy was in force the Texas Workmen's Compensation Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz) was amended (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) to provide that, if an employé hired in Texas sustained an injury in the course of his employment, he should be entitled to compensation according to the law of Texas though the injury was received outside of the state, such amendment became part of the policy, and the insurer was liable for an award to an employé injured in Louisiana under Texas employment.

**2. Insurance ⊂⊃435 — Employé of pipe line contractor held a Texas employé when injured and under protection of policy.**

Employé of pipe line contractor, hired in Texas, whose work took him into several states other than Texas, having been placed in charge of work in the Caddo oil field, including a part of Louisiana, and Marion and Panola counties, Tex., in view of such facts and others, *held* a Texas employé of the contractor when injured in Louisiana in his work of superintendence, and under the protection of the contractor's policy.

**3. Master and servant ⊂⊃383—Protection of employé by compensation policy not lost because employer failed to pay proper premium.**

If under the laws of Texas an employé was protected by the policy issued by his employer's workmen's compensation insurer, such protection was not lost because the employer failed to pay the proper premium to the insurer.

**4. Master and servant ⊂⊃398 — Compensation insurer not aided by presentation of claim to other insurer.**

Where the agents of an employer's workmen's compensation insurer of Texas employés assumed that a liability was under the employer's other policy with another company covering Louisiana employés, and without request from the injured Texas employé or the employer presented claim to the other insurer, the fact does not aid the Texas insurer to escape liability to the injured Texas employé for the award, though subsequently the injured employé through his attorneys presented claim to the Louisiana insurer through local agents.

**5. Master and servant ⊂⊃398—Delay in filing claim excused by assurances to injured employé by agents of compensation insurers.**

Where an injured employé, on account of assurances given him by persons claiming to be agents of one or the other of the employer's insurers that no proceedings would be necessary, delayed presentation of his claim to the proper insurer, but the same was presented and filed with the Industrial Accident Board within a year, while the board made its award in favor of the employé, thereby holding the delay in the case came within Workmen's Compensation Law, pt. 2, § 4a (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—43), the circumstances were sufficient to excuse the employé's delay in filing claim until after six months.

**6. Master and servant ⊂⊃398 — Notice to or knowledge of injury by employer notice to compensation insurer.**

Where a workmen's compensation insurer stipulated in its policy that as between employé or defendants and the insurer, notice to or knowledge of injury on the part of the employer should be notice to or knowledge on the part of the insurer, while the Workmen's Compensation Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz) was amended in 1917 (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) to provide that notice to the employer was notice to the insurer, the insurer had notice of an injury on account of the notice or knowledge of the employer.

**7. Master and servant ⊂⊃391¼, New, vol. 10A Key-No. Series—Interest properly allowed in view of notice to compensation insurer.**

The trial court properly allowed interest to an injured employé against the employer's workmen's compensation insurer on the amount allowed the employé for medical and surgical attention and for the weekly payments from the due date of each item under the act, the insurer having had notice of the injury through the notice to or knowledge of the employer.

Appeal from District Court, Jefferson County; E. A. McDowell, Judge.

Action by the Home Life & Accident Company against W. W. Orchard to set aside an award of compensation to defendant by the

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Industrial Accident Board. From judgment sustaining the award, plaintiff appeals. Affirmed.

Andrews, Streetman, Logue & Mobley, of Houston, for appellant.

Sol E. Gordon and A. D. Lipscomb, both of Beaumont, for appellee.

WALKER, J. This is an appeal from a judgment of the district court of Jefferson county sustaining an award made by the Industrial Accident Board of Texas in cause No. C-10868, W. W. Orchard, Employé, v. B. H. Willis, Employer, and Home Life & Accident Insurance Company. On the 27th day of May, 1917, W. W. Orchard was injured in the state of Louisiana in the course of his employment by H. B. Willis. At that time Willis was operating both in Louisiana and in Texas. Under the Workmen's Compensation Act of Louisiana (Act No. 20 of 1914), he carried insurance with the Georgia Casualty Company, for the protection of his Louisiana employés, and he also carried with appellant, under the Texas Workmen's Compensation Act (Laws 1913, c. 179 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246-zzzz]), protection for his Texas employés.

Appellant's first and second assignments of error present the following propositions:

[1] 1. At the time Orchard was injured, did the Texas Workmen's Compensation Act give extraterritorial effect to the policy issued by appellant to B. H. Willis?

On February 15, 1917, when this policy was written, the Workmen's Compensation Act of Texas contained no provision giving it extraterritorial effect, but by the terms of its policy appellant had contracted "to pay in the manner provided by the laws of such states or commonwealths of the United States as are in force at the time this policy takes effect, or any subsequent amendments thereto." Before Orchard was injured, this act was amended in the following words:

"If an employé who has been hired in this state, sustain injury in the course of his employment, he shall be entitled to compensation according to law of this state even though such injury was received outside of the state." Laws 1917, c. 103, pt. 1, § 19 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—38).

This amendment clearly gives the act extraterritorial effect, and at the time it went into effect appellant's policy was in force. On the 29th of March, Smelker & Maxon, appellant's local agents at Beaumont, wrote Mr. Willis as follows:

"The Workmen's Compensation Law of this state, heretofore set out as chapter 179, Acts of 1913, has been amended by the Thirty-Fifth Legislature, just adjourned, and the amended bill has now been signed by the Governor.

"We wish to advise you that your policy of insurance, delivered to you by us, protects you completely under the amended Law as heretofore, and should any change or indorsement be necessary later same will have our prompt attention."

At the time this letter was written, this amendment had gone into effect. As we construe appellant's policy, this amendment comes within the terms above quoted, and, if we are right in this conclusion, then it gave extraterritorial effect to the policy at the time Orchard was injured. This construction follows both from its terms as quoted above and from the letter of its local agents to Mr. Willis. To so hold does not amount "to an invasion of the right of contract," nor is it "an effort to give retroactive effect to a statute inconsistent with a pre-existing contract between the parties," as urged. Appellant had contracted in relation to future amendments, and, when these amendments took effect, they became as much a part of the policy as the provisions of the law at the time the policy was written.

[2] 2. At the time of his injury, was Orchard under the protection of appellant's policy with Willis, that is, was he one of Willis' Texas employés, or was he a Louisiana employé? Orchard entered the service of B. H. Willis in 1913, under a contract made in Beaumont, Texas. He remained in this employment until some time in 1919. During these years he worked for Mr. Willis wherever his duties called him, part of the time in Jefferson county, Tex., part of the time in Tyler county, Tex., part of the time in Oklahoma and Louisiana, and again in Panola and Marion counties, Tex. Mr. Willis was a contractor, doing pipe line work and other work connected with the oil industry. In 1916, after Orchard had finished his Oklahoma work, Willis placed him in charge of his work in the Caddo oil field. This field included a part of Louisiana, and Marion and Panola counties, Tex. Orchard was made general foreman of this work, with full authority to employ and discharge the employés working under him. Prior to his injury, he had had his home in Beaumont for many years, owned his home there, and kept most of his furniture there. His family lived there except when they were with him on one of Willis' jobs. When Willis sent him to the Caddo fields, he raised his salary to $125 per month and house rent. This rent was estimated at $25 per month. When he was placed in charge of the Caddo field operations, he carried his family with him, and they occupied a house belonging to Mr. Willis in Mooringsport, La. During this time Orchard maintained a field office in Louisiana and two field offices in Texas. The testimony does not show how much of his time was taken on work in Louisiana, nor how much in Texas; but it reasonably appears that he was going constantly from one headquarters to another. Sometimes the teams would work in both states the same day; then again they would work for three or four weeks at a time in Texas. He had

not been in Texas for about a week at the time he was injured. No new contract was made by Willis with Orchard from the time Orchard entered his service in 1913 until he quit in 1919.

According to the undisputed testimony, during all the years of his employment by Willis, Orchard had his general headquarters in Beaumont, Jefferson county, Tex. From the general nature of his employment, as stated by us above, his absence from time to time from Beaumont in the service of Willis was only temporary. Even while on the Caddo oil field job, his home was in Texas and he maintained two field headquarters in Texas. While it is true that his family was in Mooringsport, La., they were there temporarily while he was doing that work.

Under these facts, at the time Orchard was injured, we believe he was a Texas employé of B. H. Willis, and was under the protection of appellant's policy.

[3] On this issue we do not agree with appellant, that the undisputed proof shows that Willis paid appellant no premium on Orchard's wages; but, as we regard a finding on this issue immaterial to the determination of any issue in this case, we will not quote the testimony. If, under the laws of Texas, Orchard was protected by appellant's policy, this protection was not lost on the ground that Willis failed to pay the proper premium to appellant. If he owed the premium in 1917 and has not paid it, he still owes it, and appellant can collect it now, unless it is barred by the statute of limitation.

[4] Nor do we see how appellant can be aided by the fact that, after his injury, Orchard presented his claim to the Georgia Casualty Company. This mistake was first made by the agents of appellant. They assumed that the liability was under the Louisiana policy, and, without any request from Orchard or Willis, presented the claim to the Georgia Casualty Company. It is true that afterwards Orchard, through his attorneys, presented this claim to the Georgia Casualty Company, through Smelker & Maxon, local agents; but these facts do not create an estoppel in appellant's favor. It has paid nothing for a release against its liability under this policy, nor has Orchard done or said anything that has in any way hindered it in presenting its defense to this suit.

[5] The following is appellant's third assignment of error:

"The trial court erred, to the prejudice of the appellant, in rendering judgment in favor of the defendant for compensation under the Texas Workmen's Compensation Act, because of the failure of defendant to comply with the requisites of the law as to claiming compensation within the six months' period stipulated in the statute."

This case was tried by the court without a jury, and on request of appellant the trial court filed conclusions of law and fact. No

assignment of error, challenging these conclusions, is brought forward in the brief. This third assignment is against the judgment of the court, and does not attack the conclusions of law and fact on which it was based. On this issue the trial court found:

"Owing to the confusion arising in this way and to assurances given to Orchard by persons claiming to be agents of one or the other companies that no proceedings would be necessary, the presentation of the claim to the plaintiff company was delayed, but same was presented and duly filed with the Industrial Accident Board within a year and finding thereon in Orchard's favor by the Industrial Accident Board was made on August 30, 1918.

"The first question to be decided is whether or not the right of recovery was barred when the claim was presented to the Industrial Accident Board; the evidence is that the claim was presented to the Board some date between May 7th and June 15, 1918. That Board made its award in favor of Orchard in the month of August, 1918, and thereby hold that the delay in this case came within the following clause of section IV–A of the law, viz.:

"Provided that for good cause the Board may in meritorious cases waive the strict compliance with the foregoing limitations as to notice and the following of the claim before the Board.

"This discretion is vested in the Board and perhaps is not subject to review. If it is, the circumstances of this case are sufficient to excuse the delay in filing, the claim having been presented within the year and the delay reasonably explained; and there being no doubt about the nature and extent of the injury suffered nor as to its having been sustained in the course of employment, the case is clearly a meritorious one."

It seems to us that this conclusion by the court is sufficient to sustain the judgment. But if we are in error in our construction of appellant's assignment of error, it does not appear that the Industrial Accident Board, in waiving the limitations as to notice and filing of the claim, has abused the discretion vested in it by law.

If appellant was not bound by this judgment of the Industrial Accident Board, then we say it appears from the record in this case that this issue was tried de novo in the district court, and a finding was made against appellant's contention. We believe, on the assignment presented, the facts sustain the court's conclusion.

[6] In the district court judgment was rendered against appellant allowing Orchard a recovery for medical and hospital services in the sum of $198. Appellant stipulated in its policy:

"As between the employé or his dependents and the company, the notice to or knowledge of the occurrence of an injury on the part of the employer shall be the notice or knowledge as the case may be on the part of the company."

The amendment to this act in 1917 provided that notice to the employer was notice

to the company. Hence, appellant's contention that it had no notice of the injury was not sound. Orchard recovered on this item under the 1917 amendment. If we were correct in our construction of this amendment in Home Life & Accident Co. v. Cobb, 220 S. W. 132, then no error is shown in this ruling.

[7] The trial court properly allowed interest on the amount allowed for medical and surgical attention, and for the weekly payments from the due date of each item under the statute. Appellant's objection to this interest allowance is that—

It "had no information that Orchard ever sustained any such accident and had no opportunity to discharge any such obligation and was under no legal obligation to do so, no claim ever having been filed until approximately a year later."

Our discussion of the other assignments disposes of this one.

Finding no error in this case, the judgment of the trial court is in all things affirmed.

### On Rehearing.

In our judgment, this case turns on the fact as to whether Orchard was one of Willis' Texas employés. If he was, then under the express terms of the policy and the 1917 amendment to the Workmen's Compensation Act he was protected. In his motion on rehearing, appellant asserts that this court did not "even mention the effect of the undisputed evidence that Willis deliberately divided his work, and that he undertook to cover the work in which Orchard was engaged by the Louisiana policy, and undertook to cover the remainder of his work, in so far as being conducted in Texas, under Home Life & Accident Company policy." We recognized this contention, and found as follows:

"Under the Workmen's Compensation Act of Louisiana, he (Willis) carried insurance with the Georgia Casualty Company for the protection of his Louisiana employés, and he also carried with appellant, under the Texas Workmen's Compensation Act, protection for his Texas employés."

We also stated that the Caddo fields covered the work in Louisiana, and also the work in Marion and Panola counties, Tex. At the time he was injured, unquestionably Orchard was engaged on the Caddo work, but this was not his permanent work. He was in the regular and permanent employ of Willis. He had been with Willis for many years. Willis sent him where he was needed. At this particular time, as we have said, he was temporarily in Louisiana—temporarily in charge of the Caddo work. He was not employed by Willis to do this work; but "in the course of his employment" by Willis—just an incident of his regular Texas employment—he was sent to the Caddo fields.

The conclusion is irresistible that Willis had a right, under this contract, to recall Orchard from this work and place him on another job. Had Willis done so, Orchard's general employment would have continued. It is also true that Orchard hired his help in Louisiana, that is, Willis hired the help, acting through his agent, Orchard. These men so employed were Louisiana employés. They were hired for this special work, and for this work only. They were protected by the Georgia Casualty policy. It seems to us the 1917 amendment was enacted to cover just this character of employment. If Orchard had been employed for the purpose of managing the Caddo job, and his employment had ended with the completion of that work, we would have before us a different question.

We believe the other propositions advanced by appellant are fully covered in our original opinion.

The motion for rehearing is in all things overruled.