## TEXAS EMPLOYERS' INS. ASS'N v. VOLEK et al.
### No. 2597.

Court of Civil Appeals of Texas. El Paso.
Dec. 17, 1931.

Rehearing Denied Jan. 7, 1932.

Sewell, Taylor, Morris & Garwood and W. J. Knight, all of Houston, for appellant.

C. H. Chernosky and A. B. Gerland, both of Houston, for appellees.

WALTHALL, J.

This suit was brought by appellant to set aside a compensation award made by the Industrial Accident Board of Texas, under the Workmen's Compensation Law. The suit involves that part of article 8306, § 19, and acts amendatory thereof (Vernon's Ann. Civ. St. art. 8306, § 19) known as the "extra-territorial clause," which provide: "Sec. 19. If an employee, who has been hired in this State, sustain injury in the course of his employment he shall be entitled to compensation according to the Law of this State even though such injury was received outside of the State, and that such employee, though injured out of the State of Texas, shall be entitled to the same rights and remedies as if injured within the State of Texas, except that in such cases of injury outside of Texas, the suit of either the injured employee or his beneficiaries, or of the Association, to set aside an award of the Industrial Accident Board of Texas, or to enforce it, as mentioned in Article 8307, Sections 5-5a, shall be brought either" (then providing for venue of the suit, the time within which the injury shall have occurred, and providing against recovery in the event the injured employee has elected to pursue his remedy and recovers in the courts of the state where such injury occurred); but as no questions are presented as to venue, exceptions, or provisions in the article of the statute, we need not state it further.

The facts as to the nature and result of the suit are substantially as follows:

J. S. Abercrombie Company is a private Texas corporation, engaged in the business of drilling oil wells for various parties in Texas, Louisiana, and other states, and, at all times material to this suit, was a subscriber under the Workmen's Compensation Law of Texas and Louisiana, and held a policy of compensation insurance under appellant, the Texas Employers' Insurance Association, and held a policy of compensation insurance with the Employers' Casualty Company under the Workmen's Compensation Law of Louisiana,

and was an employer of labor in each of said states, and had men working for it in each of said states, and has carried at its general office in the city of Houston, Tex., a separate pay roll covering the men working in Texas and those working in Louisiana. In fixing the amount of premium due on each policy of compensation insurance, the J. S. Abercrombie Company furnished the insurance company carrying such insurance a statement of its pay roll of money paid to its employees, as a basis for calculating the amount of premium due the association by the employer. Frank W. Volek, on the 21st day of December, 1928, was an employee of J. S. Abercrombie Company, under a contract of hire as helper in drilling a well for oil in the Hackberry oil field in Louisiana, and while in the course of his employment, and in the furtherance of the business of his employer, he was injured, and, on said day as a direct result of said injury, died in Louisiana.

Appellees Mike Volek and Rosie Volek are husband and wife, and respectively, the father and mother of Frank W. Volek.

In June, 1929, the Industrial Accident Board of Texas made and entered an award granting compensation to appellees, and ordered that appellant pay to appellees said compensation award, distributed in the ratio stated, and in the award made an allowance for appellee's attorney.

This suit was brought by appellant to set aside the final ruling and decision of the Industrial Accident Board in making said award for compensation to appellees.

Appellees filed its answer in cross-action setting up substantially the facts as above stated, and such additional facts as are thereinafter stated under the propositions discussed.

The trial of the case without a jury resulted in a judgment in favor of appellees, and appellant prosecutes this appeal.

### Opinion.

Appellant makes the contention that the extraterritorial clause of the Workmen's Compensation Law of Texas as provided in article 8306, § 19, above stated, does not apply to an injury received by an employee "hired in Texas to work exclusively within the boundaries of another State doing work wholly independent of and disconnected with other operations of his employer conducted within the State of Texas."

The proposition assumes that Frank Volek was employed to work exclusively in Louisiana, and also that by the terms of his employment his work was to be wholly independent of, and disconnected with, other operations of the Abercrombie Company in Texas. We do not think the evidence necessarily bears such interpretation. We think it better and clearer, however, to state our view of the

application of said section 19 to the facts as reflected by the record, rather than to the facts stated in the proposition.

The parties agreed in writing as follows: "That during the year next preceding the injury and death of Frank Volek he worked for his employer, Abercrombie Company, a part of such year in the State of Texas, and a part of such year in the State of Louisiana; that while he worked for his company in the State of Texas, his employer carried his name on what is known as the Texas payroll and reported his wages and the money paid to him to the Texas Employers Insurance Association as a basis for calculating the amount of premium due said Association based on the amount paid Volek while he was in Texas, and paid no premium to such association on the amount paid him after he left Texas. That during the time the said Frank Volek, deceased, worked for his employer in the State of Louisiana he was carried on what is known as the Louisiana payroll"—then follows the same statement as to the report of payment of money as on the Texas pay roll.

John R. Bass testified that he was the driller for Abercrombie Company under whom Frank Volek worked, both in Texas and Louisiana. Abercrombie Company's office was in Texas. From the first of April to and including December 21, Bass was drilling oil wells in Texas and in Louisiana; said: About October 15th "we started to move the rig to Hackberry, Louisiana, and began work there on October 20th, 1928, and continued work there up to and including December 21, 1928, and after that. * * * During the period from the first of April to and including the 21st of December, 1928, in the Damon Oil field in Brazoria County, Texas, and in the Hackberry Oil field in Cameron Parish, Louisiana, Frank W. Volek worked as a helper on the floor of the rig. * * * I told Frank W. Volek some time in October, 1928, that if he wanted to come down to Louisiana to work I would put him to work as soon as the rig got to Hackberry, and he went to work on October 20th, 1928. The employment of Frank W. Volek by J. S. Abercrombie Company, Inc., from the first day he began to work, October 20th, 1928, to and including the 21st of December, 1928, the time of his death, was continuous."

Laurance A. Burns testified: Knew Frank Volek during his lifetime; knew him at Damon, Brazoria county, Tex. He is dead. He lived, at the time of his death, at Damon, and he lived there for some time before his death. Witness worked for J. S. Abercrombie close to Damon, Tex., from 23d of July until about 15th or 18th of October, 1928. Frank Volek was working on same job. Said: "On the 12th day of October, 1928, we were tearing down and boxing up tools, fixing to go to Louisiana, to ship the rig to Louisiana. * * * On that day I heard John Bass and Frank

Volek talking to each other. * * * Mr. Bass wanted to know who all was going to Louisiana with the job down there. He said we would all go down there and have the same jobs back that we had there. He said that the rig was going to Louisiana, and we all had our same jobs there. He was talking to Frank Volek. Frank said he was going, and different one's named over who was going and who wasn't going, and he said: 'all right, all that is not going I will pay you all off here.' He wrote out checks for all that did not go, and he did not write checks for all that went. * * * Bass said: 'Frank, you are going,' and he said, 'all right. * * *' Preceding that Mr. Bass, talking to Volek and the others, wanted to know who all were going to Louisiana. Frank Volek said: 'I will go, I want to go with the job.' He said: 'I will have the same pipe-rack job down there, and Bass said: 'the same thing over there.' "

G. W. Wisely testified: Is the driller; knew Frank Volek in his lifetime. Witness worked for the Abercrombie Company at Damon, Texas; was night driller, the day driller was John R. Bass. Frank Volek was a pipe-racker on the same rig with witness all the time mentioned. After speaking of the crew, including Frank Volek, going from Damon to Hackberry, witness said: "I know that J. S. Abercrombie paid Volek for traveling from Damon, Texas, to Louisiana, because I saw the check. I saw it out there on the job at Damon. The check was made out in the office here in Houston. * * * Before we left Damon he (John Bass) told me to give these men a day for going down there (to Louisiana)."

Annie Volek, a sister of Frank, testified: The Volek family, including Frank, lived near Damon, Tex. Up to the time he went to Louisiana Frank stayed at home, lived there, had his clothes and everything there. He did not take his trunk to Louisiana; took just a suitcase.

■ The evidence, of which the above are brief extracts, we think justifies the court's finding, expressed in the judgment, that Frank W. Volek was employed by the J. S. Abercrombie Company, that he lived in Texas and was sent by said company to the state of Louisiana temporarily. The evidence shows that the employer was drilling wells in both states; that the same crew, under the same boss, worked on the same rig in either state, and without any expression indicating whether the work in Louisiana was temporary or permanent.

The evidence seems to clearly establish the facts that Frank Volek was an employee of J. S. Abercrombie Company in drilling oil wells in Texas before and at the time of his employment to go to Louisiana; that he was hired in Texas to go to Louisiana on

the same character of employment as in Texas; and that he did go to Louisiana and was there injured in the course of his employment, from which he died.

■ We think it immaterial, so far as these appellees are concerned, whether appellant was paid a premium based on Frank Volek's wages; that being a matter purely between appellant and the employer. As said by the Beaumont court in Home Life & Accident Company v. Orchard (Tex. Civ. App.) 227 S. W. 705, 707: "If, under the laws of Texas, Orchard was protected by appellant's policy, this protection was not lost on the ground that Willis [the employer] failed to pay the proper premium to appellant." See, also, Sheek v. Texas Co. (Tex. Civ. App.) 286 S. W. 336; Texas Employers' Ins. Ass'n v. Price (Tex. Civ. App.) 300 S. W. 667.

■ Appellant suggests that if Frank Volek was employed in Texas to work in Louisiana, such employment ended in Louisiana about the 11th of November, 1928, when he was laid off for several days on account of an injured arm, and for the time he was laid off he was not paid for the time he was off, and for that reason the contract was terminated; that when he returned to work in Louisiana it was under a new contract of hire not made in Texas.

The facts show substantially the following: From the 11th of November to the 22d of November, 1928, Frank Volek worked for the Abercrombie Company under G. W. Wisely in the Hackberry oil field in Louisiana. Wisely was night driller. Wisely had authority to hire and discharge. While Frank Volek was working on the rig in the course of his employment he fell and hurt his arm. Wisely testified: "Volek was just a day laborer, paid so much per day. * * * When Volek got his arm hurt he was working for me. * * * I marked it on the report as 'Arm injured.' He fell and hurt that arm, and you are supposed to report those things on the report. * * * My report on that came to the Houston office of J. S. Abercrombie Company. A man was employed to take Volek's place over there while he was hurt. * * * I told Volek when he left, after he got his arm hurt, that when he got well and was able to work again, I would give him his job back if he would come back over there. He went back on the day job with the same fellow he had been working for. * * * I requested Bass to give him his job back and Bass agreed to do it. Johnny (Bass) had an inexperienced fellow working on the day crew, and I told him to let Frank go back on the day crew and let the inexperienced man work nights. * * * I talked to Bass and Bass put him back on the day shift; that was his old job, you see." Frank Volek drew no pay while off on account of injury to his arm.

The question presented is whether the evidence shows that Wisely, in fact, discharged Frank Volek. If Frank was discharged as claimed by appellant, his later return to work might not be a hiring in this state, and a discharge of appellant from liability under the Texas law.

The evidence shows that Frank did return to work under Wisely after a few days' absence, "when he got well and was able to work again," and was put to work on the day shift, his old job, under Bass, at the suggestion of Wisely. We think the evidence does not show a discharge, and that his work thereafter was a continuance as an employee hired in this state.

Appellant devotes much of its brief in discussing the constitutionality of section 19, of article 8306 of the statute, and acts amendatory thereof, of our Workmen's Compensation Laws, because and if said section is construed and made to apply to an employee hired in this state, where the terms of the hiring is to do specified work in another state, who has sustained injury in the course of his employment, to be entitled to compensation according to the law of this state though such injury was received outside the state, in this instance in Louisiana; that such law so construed and applied is arbitrary, unreasonable, and unnecessary regulation of and restraint upon appellant and those engaged in writing Workmen's Compensation insurance in Texas, for that it imposes upon appellant an obligation and responsibility not assumed in its policy, and in conflict with, and in derogation of, the sovereign rights, in this instance, of the state of Louisiana to contract and regulate such matters.

Our statute expressly provides for compensation according to the laws of this state where the employee has been hired in this state and is injured in another state; it makes no different stipulation as to liability where the contract of hiring provides that the work of the employee is to be performed in another state.

Without discussing the constitutionality of the statute as written, we think it is not unconstitutional. The question presented is its application to the facts found; that is, that Frank Volek, then an employee of J. S. Abercrombie Company, the employer, was hired in Texas to go to Louisiana and there do or continue to do the same work or class of work as he was doing in Texas when employed, and that while so engaged in the performance of such work for his employer in Louisiana, he received an injury from which he died. The employer, J. S. Abercrombie Company, at the time of such employment was doing the same kind of work, drilling wells, both in Texas and in Louisiana. In fact, the same rig Frank Volek was working on in Texas was moved to Louisiana, and

Frank Volek continued to there work with the same rig and under the same boss, and on a contract which the employer had previously contracted to do, and when finished, if no other at that time, there would have been no further employment there. The policy of insurance sued on, so far as applicable to the question presented, reads:

"The Texas Employers' Insurance Association does hereby agree with the employer, named and described as such, in the Declaration forming a part hereof, (J. S. Abercrombie Company), as respects personal injuries sustained by Employees, including death at any time resulting therefrom as follows:

"One (a) To pay promptly to any person entitled thereto under the Workmen's Compensation Law, and in the manner therein provided the entire amount of any sum due, and all installments thereof as they become due.

"1: To such person because of the obligation for compensation for any such injury imposed upon or accepted by this employer under such of certain statutes, as may be applicable thereto, cited and described in an endorsement attached to this policy, each of which statutes is herein referred to as the Workmen's Compensation Law, and

"2: For the benefit of such person the proper cost of (medical, surgical, nurse and hospital, etc.)

"It is agreed that all of the provisions of such Workmen's Compensation Law covered hereby shall be and remain a part of this contract as fully and completely as if written herein, so far as they apply to compensation or other benefits for any personal injury or death covered by this policy, while this policy shall remain in force. Nothing herein contained shall operate to so extend this policy as to include within its terms any Workmen's Compensation Law, scheme or plan not cited in an endorsement hereto attached.

"One (b) To indemnify this employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed wherever such injuries may be sustained within the territorial limits of the United States of America or the Dominion of Canada."

Then under the "Texas Endorsement," it is provided that the policy includes such compensation laws and none other namely; then names our Texas laws and all laws amendatory thereof.

The policy does not except or exempt from its provisions by any provision in the policy itself, nor does the policy by its terms expressly assume liability for injury or death to any employee where the employee, by the terms of the contract of his employment, contracts to work in a state other than the state where the contract of employment was

entered into. The question presented is determined by a proper construction placed upon our Texas Workmen's Compensation Law, in view of the facts found, and the expressed purposes for which the insurance policy was written.

In Moore v. Lumbermen's Association (Tex. Com. App.) 258 S. W. 1051, 1053, discussing the nature of the rights of an awardee in a compensation case, it is there said: "There is such a variance among the provisions of the statutes [of the different states] and each of them so differs from our compensation statutes that not much assistance in the interpretation of our statutes can be gathered from the decisions determining the question in other states."

▆▆▆ The insurance policy here was made in view of, and with reference to, our Texas Workmen's Compensation Laws, and must be construed and applied with reference thereto. Where an employer enters into a contract of employment in Texas with an employee, then working for the employer in Texas, and the employer simply transfers the place of the employee's work from Texas to Louisiana, the character of the employee's work being the same in both places, even as to the same machinery and the same boss, we think that, in view of our Texas Compensation Law in such case, providing that where such employee sustains injury in the course of such employment he shall be entitled to compensation according to the law of Texas, though such injury was received in Louisiana, it should be held that the parties to such insurance policy understood and contracted with reference to such statute, injury, and liability, and that the mere fact that the employee and the employer in the contract of employment provided that the work to be performed should be performed in Louisiana, would not have the effect to relieve the insurer of liability for such injury. Such construction, in our opinion, would not interfere with appellant's freedom of contract, or abridge its right to make any proper contract with reference to its liability in such cases. Home Life & Accident Co. v. Orchard (Tex. Civ. App.) 227 S. W. 705; Texas Employers' Insurance Ass'n v. Price (Tex. Civ. App.) 300 S. W. 667; Norwich Union Indemnity Co. v. Wilson (Tex. Civ. App.) 17 S.W.(2d) 68.

The wording of our statute is not equivocal but plainly expressed, and judicial action ought to assist in its interpretation and securing its benefits, rather than to curtail it by refinements of interpretation, read into the insurance policy contract and into the contract of employment itself the provisions of the statute, having regard for the purpose for which the compensation act is designed. Indeed, it has been said that where the contract of employment was made within the state, and the injury occurred while the employee was temporarily in another jurisdiction, it is hard to see what difference it can make whether the locus of calamity is on the near or far side of the state line, because the interests of injured workmen and their dependents, and the interests of the state in its citizens, is just as great in one case as in the other. Formerly there was a marked difference between the holdings of state and federal courts. Even as late as 1917, after compensation acts had been passed by a majority of the states, it was said by the United States Supreme Court that "the scheme of the act is so wide a departure from common-law standards respecting the responsibility of employer to employee that doubts naturally have been raised respecting its constitutional validity." New York Central R. Co. v. White, 243 U. S. 188, 37 S. Ct. 247, 250, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629.

The above apparently influenced some of the federal courts, and especially where there was the least suggestion of interstate or extraterritorial facts involved. The above attitude, however, has changed, and the law is now generally approved in all jurisdictions. See note, Ann. Cas. 1918B, 611, and referred to in 28 R. C. L. p. 739, par. 35.

Article 8306, with section 19 of the article, was enacted when the insurance policy was written in May, 1928; the policy by its terms refers to and makes applicable to the policy the provisions of the Texas Workmen's Compensation Law, and we see no good reason why the law, with its territorial limits stated, should not be applied to the facts of this case.

Appellants' propositions have all been considered, and are overruled.

Finding no reversible error, the case is affirmed.