## SOUTHERN UNDERWRITERS v. GALLAGHER.

### No. 1770.

Court of Civil Appeals of Texas. Eastland.

April 1, 1938.

Rehearing Denied April 29, 1938.

Battaile, Burr & Holliday, of Houston, for plaintiff in error.

Scarborough & Ely, of Abilene, for defendant in error.

GRISSOM, Justice.

Plaintiff, Gallagher, obtained a judgment against defendant, Southern Underwriters, under the Texas Workmen's Compensation

Law, Vernon's Ann.Civ.St. art. 8306 et seq., for the loss of a thumb while working for the Liberty Oil & Drilling Company., Inc., about March 10, 1936, in New Mexico. Plaintiff alleged that at said time he was "an employee of the Liberty Oil and Drilling Company, Inc., in Winkler County, Texas, in the capacity of a tool dresser; that the Liberty Oil and Drilling Company, Inc., his said employer, was at said time engaged in the work of drilling and producing oil and by-products therefrom, which said work was in the usual course of employment of said employer."

The question involved necessitates a construction of article 8306, section 19, subsection 1, R.S.1925, as amended, Vernon's Ann.Civ.St. art. 8306, § 19, subsec. 1, and the application of the facts of the case thereto. The question is presented whether or not at the time of his injury Gallagher was a Texas employee, or employee in Texas, under a contract of hiring who was temporarily sent out of Texas to perform labor or services for his employer.

Plaintiff testified, among other things, as follows:

"Q. Where and when was it that you first ran across any member of the Liberty Oil and Drilling Company and talked to them, if you did, about going to work for them? A. At Kermit, Winkler County, Texas.

"Q. Who was it you talked to at that time? A. Well, I talked to both Mr. H. Harold Berquest, the President of the Company and I talked to Mr. Lunceford, the Drilling Superintendent.

"Q. You say that conversation took place in Kermit, Texas? A. Yes sir.

"Q. How close is that to the New Mexico line? A. Winkler County and Lea County border; that's about, I guess, twelve miles from the line. * * *

"Q. Now Joe, what if anything was said between you and these representatives of the Liberty Oil and Drilling Company, and yourself, with reference to or about your going to work for them? A. Well, the first time I talked to them about going to work they were going to drill a deep well there near Pecos, Texas. I spoke to them about going over there on that job and they said, 'Well, when we get ready to start we will send you over there, near Jal. * *

"Q. Did you go to work on this well near Pecos, Texas? A. No sir; they started this one over here and said, 'You go over there. When we get ready to rig up we will transfer you back here.' * * *

"A. Well, he asked me, he said, 'I will send you over on this deep test in Pecos County, which will be another job.' I said, 'I would rather work in Texas than in New Mexico,' I said, 'for several reasons. I live in Texas; my family lives in Kermit and I would prefer a job in Texas, and various reasons.' He said, 'Well, you go on over there.' He said, 'We carry Texas compensation' and I took the job and went over on those premises.

"Q. Did you go to work for them in Pecos? A. No sir. I was injured before that job started. * * *

"Q. When did you talk to Mr. Lunceford prior to the time you reported for work on the first day of March, in Jal, New Mexico? A. I talked to him the day before I reported for work.

"Q. Where did you talk to Mr. Lunceford the day before? A. At his home in Kermit, Texas. * * *

"Q. What, if anything, was said about the amount of money that you would get for doing the work? A. Eight dollars a day, was the wage scale. * * *

"Q. Did you have any conversation with Mr. Lunceford about when you were to report for work? A. Yes sir.

"Q. When, if any date, when if any time, did he tell you to report to the Liberty Drilling Company in Jal, New Mexico? A. I talked to him on the last day of February and he says, 'You report in the morning for duty, and go to work rigging up.'

"Q. Where were you to report for duty? A. I reported in Jal, New Mexico, in Lea County.

"Q. In compliance with that conversation did you report for work the next morning in Jal, New Mexico? A. Yes sir.

"Q. Where did you stay during all of the time that you were working in Jal, New Mexico? A. I stayed in Kermit, Texas.

"Q. Would you come back there every night? A. Yes sir. * * *

"Q. What did he tell you that you were to receive? A. Eight dollars a day for eight hours.

"Q. And you went to work, as I understand, for the Liberty Oil & Drilling Company there at Jal, New Mexico, March the first, 1936? A. Yes sir.

"Q. When was it, if at any time, after that that you received an injury, while

working for the Liberty Oil & Drilling Company? A. It was about eleven o'clock A. M. March the tenth. * * *

"Q. What kind of work did the Liberty Oil & Drilling Company do? A. They were drilling contractors and independent oil operators.

"Q. Did they have any equipment or production property in Texas that you know of? * * * A. I could not say that they had any production; they had tools and drilling rigs running.

"Q. In Texas? A. Yes sir.

"Q. You knew that of your own knowledge? A. Yes sir. * * *

"Q. Was that similar, please state whether or not the work that you were doing on this particular well in Jal, New Mexico, was similar to other work that the Liberty Oil and Drilling Company was doing? A. The same work, yes sir. * * *

"A. Well, it was in January that I talked with Mr. Lunceford. I saw the Liberty Oil and Drilling Co. sign out there in his tool yard and I spoke to him there. * *

"Q. You say that conversation occurred in his yard? A. Yes sir, in his home.

"Q. At his home at Kermit? A. Yes sir.

"Q. Well, he didn't agree to employ you at that time, did he? A. First opening he had. * * *

"Q. What did Mr. Lunceford tell you? A. He told me he had a job for me.

"Q. Where did he say it was? A. He said report for duty the next morning over at, in this Lea County, New Mexico, near Jal.

"Q. Was anything else said in connection with your going to work for him? A. Yes sir.

"Q. What else did he say? 'A. He said that they were figuring on starting this deep test in Pecos County and he would transfer me to that.

"Q. *What else did he say about working at Jal at that time?* A. *He said he only wanted me to stay there until they started this test and he would transfer me back.* * * *

"A. Well, I told him that was a long drive for my automobile. That was when I was living in Kermit. * * *

"Q. What did he say? A. He said, well you can go out to that job in the morning. As I told you a while ago I talked to him about other jobs.

"Q. Just this conversation at his house; he said you could go out on that job in the morning? A. Yes sir.

"Q. Is that his words? A. Well, I told him all right, however, I told him it was not close. I do not want him to stop me when I get started.

"(The Court): Go ahead. * * *

"A. *He said, that's a long drive over there but he said I figure on starting this other well and as soon as we get started, get the derrick up and going I will transfer you back to this job, which will be a closer drive and more convenient living conditions for your family.*

"Q. What did you say? A. I told him that I would appreciate it, that *I wanted to work in Texas.*

"Q. Was anything else said? A. Yes sir.

"Q. What did he say? A. I asked him, I said, you are covered with compensation insurance and he said, 'absolutely.' He said, *'We have a Texas policy on our men over there.'* I told him that was agreeable with me.

"Q. Did he tell you that he had a Texas policy on his men over there? A. Yes sir. * * *

"Q. All right; did he say anything else in that reply? A. He said 'On the men that they hire in Texas.' He hired some men in New Mexico too.

"Q. Do you make the statement now that Mr. Lunceford told you at his house on the occasion of this conversation, on the last day of February, 1936, that he carried a Texas policy of compensation insurance on the men hired in Texas? A. New Mexico for those hired in New Mexico.

"Q. You state that he made that statement? A. Yes sir.

"Q. What did you say in response to that statement? A. I said, that's agreeable with me. *Under those conditions I will report for duty and that's what I did.*

"Q. You did report the next day? A. Yes sir.

"Q.. Over at Jal, New Mexico? A. Yes sir.

"Q. Had you ever worked for the Liberty Oil and Drilling Company prior to that time? A. No sir."

In the case of Texas Employers' Ins. Ass'n v. Volek, Tex.Civ.App., 44 S.W.2d 795, affirmed, Tex.Com.App., 69 S.W.2d 33, 34, the facts were: Volek was employed by the Abercombie Company in Texas. He

had previously worked for said employer in Texas, but was "laid off" and did not work for said company from October 3 until October 12, 1928. During such time he was not paid by the Abercombie Company. Between October 3 and 12, said company contracted to drill an oil well in Louisiana. "On October 12, 1928, Frank Volek was given one day's work by Abercombie Company cleaning up around the 'rig and boxing tools preparatory to the shipment of rig and tools to the well site in Louisiana. On this latter date, while Frank Volek was engaged in the above work, he made a contract with Abercombie Company to continue his work on the Louisiana well." It was understood that in Louisiana Volek would be given the same job that he had held with the company prior to October 3, 1928, while the company was drilling a well at Damon, Tex. His employment for work in Louisiana was in a different capacity from that in which he was engaged on the day he was hired for the Louisiana job. Justice Critz in writing the opinion said: "From the above we conclude in favor of the judgment of the trial court that, while Frank Volek was an employee of Abercombie Company in Texas, it * * * made a contract with him to go to Louisiana and continue the same services for the company that he had performed in Texas."

The opinion deals directly with the contention that Volek at the time of his death was at work under a contract of hire wholly made and entered into in the state of Louisiana for service there. After Volek started to work in Louisiana he received an injury there and was laid off for about ten days, during which period he was not paid by the employer. He then returned to work for the same company in a similar capacity. The court held that the facts did not show, as a matter of law, that Volek at the time of his death was a Louisiana employee. However, in the opinion we find the following significant language:

"A careful reading of the above statute [Art. 8306, sec. 19] shows that it has effect to extend the provisions of our Workmen's Compensation Law to any employee 'who has been hired in this State,' even 'though injured out of the State of Texas,' if such injury be received within one year from the date he leaves the state. It will be noted that the statute only purports to cover 'an employee who has been hired in this State.' This clause certainly does not have reference to the place where the hiring was originally made. *The primary purpose of our Compensation Law is to protect our own workmen. The purpose of the extraterritorial provision is to protect, under our law, employees who are such in this state under some contract of hiring, and who are incidentally or temporarily sent out of this State to perform labor or services. * * ***

"When the entire record of Frank Volek's employment is examined in the light of the above rule, we think it is fair to conclude therefrom that, while he occupied the status of an employee of Abercombie Company in Texas, he was sent or induced by such company * * * to go temporarily to Louisiana to perform services for it. We think the record further fairly justifies the conclusion that Frank Volek was killed in the course of his employment in Louisiana while performing the services he went there to perform. He was killed in less than a year after leaving this state. We conclude that he was protected by our compensation law."

In Home Life & Accident Co. v. Orchard, Tex.Civ.App., 227 S.W. 705, 707, writ refused, the facts were: That Orchard was injured in Louisiana in the course of his employment by B. H. Willis. Willis was then operating in Louisiana and Texas. Willis carried insurance for his Louisiana employees with one company and for his Texas employees with another, to wit, the appellant in that case. The question was whether Orchard was a Louisiana or Texas employee. "Orchard entered the services of B. H. Willis in 1913, under a contract made in Beaumont, Texas. He remained in this employment until some time in 1919. During these years he worked for Mr. Willis wherever his duties called him * * *." During said period of time Orchard worked for said employer in Oklahoma, Louisiana, and Texas. Prior to his injury he had his home in Beaumont, owned his home and kept most of his furniture there. His family lived there except when they were with him on one of Willis' jobs. At the time of his injury his family was with him in Louisiana. He was then maintaining a field office for his employer in Louisiana and two such offices in Texas. He was constantly going from one headquarters to another. He had not been in Texas for about a week at the time of his injury. The court said:

"From the general nature of his employment, as stated by us above, his absence

454

from time to time from Beaumont in the service of Willis was only temporary. Even while on the Caddo oil field job, his home was in Texas and he maintained two field headquarters in Texas. While it is true that his family was in Mooringsport, La., they were there temporarily while he was doing that work.

"Under these facts, at the time Orchard was injured, we believe he was a Texas employe of B. H. Willis, and was under the protection of appellant's policy. * *

"In our judgment, this case turns on the fact as to whether Orchard was one of Willis' Texas employes. If he was, then under the express terms of the policy and the 1917 amendment to the Workmen's Compensation Act he was protected. In his motion on rehearing, appellant asserts that this court did not 'even mention the effect of the undisputed evidence that Willis deliberately divided his work, and that he undertook to cover the work in which Orchard was engaged by the Louisiana policy, and undertook to cover the remainder of his work, in so far as being conducted in Texas, under Home Life & Accident Company policy.' We recognized this contention, and found as follows:

"'Under the Workmen's Compensation Act of Louisiana, he (Willis) carried insurance with the Georgia Casualty Company for the protection of his Louisiana employes, and he also carried with appellant, under the Texas Workmen's Compensation Act, protection for his Texas employes.'

"We also stated that the Caddo fields covered the work in Louisiana, and also the work in Marion and Panola counties, Tex. *At the time he was injured, unquestionably Orchard was engaged on the Caddo work, but this was not his permanent work. He was in the regular and permanent employ of Willis.* He had been with Willis for many years. *Willis sent him where he was needed.* At this particular time, as we have said, he was *temporarily in Louisiana* —temporarily in charge of the Caddo work. He was not employed by Willis to do this work; but 'in the course of his employment' by Willis—just an incident of his regular Texas employment—he was sent to the Caddo fields. *The conclusion is irresistible that Willis had a right, under this contract, to recall Orchard from this work and place him on another job. Had Willis done so, Orchard's general employment would have continued.* It is also true that Orchard

hired his help in Louisiana, that is, Willis hired the help, acting through his agent, Orchard. These men so employed were Louisiana employees. They were hired for this special work, *and for this work only.* They were protected by the Georgia Casualty policy. It seems to us the 1917 amendment was enacted to cover just this character of employment. *If Orchard had been employed for the purpose of managing the Caddo job, and his employment had ended with the completion of that work, we would have before us a different question.*"

Our question is whether Gallagher at the time of his injury was a Texas employee of the Liberty Oil and Drilling Company, Inc. At the time Gallagher was employed by the Liberty Company he was engaged in the same kind of work in Texas for another employer. He was then a Texas workman. Applying the rule announced in the Volek Case to the facts of this case, if Gallagher had worked for any period of time for the Liberty Oil & Drilling Company, Inc., in Texas prior to his injury, in connection with the other facts which could be found from the testimony in this case, we would not hesitate to say that he was a Texas employee of said company. Has Gallagher, as a matter of law, failed to show that he was a Texas employee of the Liberty Company, merely because, prior to his injury in New Mexico, he had not actually performed some labor for this particular employer in Texas, even though he was employed for a Texas job and because that particular job was not ready, he was sent temporarily to New Mexico pending the starting of work on the Pecos, Tex., well? Defendant contends not only that there is no jury finding of facts showing that Gallagher was a Texas employee at the time of his injury, but that the evidence is insufficient to have supported such a finding.

We think the evidence is sufficient to have authorized the jury to believe: That Gallagher first asked the Liberty Oil & Drilling Company, Inc., for work on a deep well to be drilled near Pecos, Tex. That a contract for employment of Gallagher by said company as a tool dresser at $8 per day was entered into at the company's headquarters in Kermit, Winkler county, Tex., where Gallagher and his family then and at all times in question resided; that it was contemplated and understood between said employee and employer that Gallagher would work temporarily in New Mexico

pending the starting of work on the "deep test in Pecos County" at which time he would be transferred to that job; that the employer was then engaged in the same kind of work in both Texas and New Mexico; Gallagher was then doing oil field work in Texas; that Gallagher during the ten days he worked in New Mexico continued to live in Kermit, Tex., driving to his work in an automobile and returning to his home every night; that Gallagher told his employer that he wanted to work in Texas, that the contract of employment was made with reference to the Texas Workmen's Compensation Law. That the employer informed the employee at the time he was hired in Texas the employer had a Texas policy that would protect him while he was working in New Mexico. That under those conditions, with the understanding that as soon as work was started on the deep test near Pecos in Texas, the employer would transfer Gallagher from the New Mexico well to the Pecos well, Gallagher, being informed that while he was working in New Mexico he was covered by the Texas Workmen's Compensation policy of his employer, agreed to and did report for work on the New Mexico well and was there injured within ten days and prior to the starting of drilling on the Pecos well. That Gallagher was hired in Texas primarily and principally for work in Texas of the same character he was then performing in Texas, and that it was understood between Gallagher and his employer that Gallagher's work in New Mexico was temporary and he would again start to work in Texas as soon as the employer could get the work on the Pecos well started.

■■■■ We believe under such state of facts the extraterritorial provision of the Texas Compensation Law is applicable; that Gallagher at the time of his injury in New Mexico was a Texas employee of the Liberty Oil & Drilling Company, Inc. All of the authorities hold that the provisions of the Texas Workmen's Compensation Law should be liberally construed in favor of the rights of the employee. We think it would be a strained and harsh construction of the extraterritorial provision of said law to hold, under the facts that could be found from the testimony in this case, as a matter of law, Gallagher was a New Mexico and not a Texas employee of said company, and that article 8306, § 19, subsec. 1, is not applicable. In considering the language used in the Volek Case, supra,

it must be remembered that the court necessarily had reference to the particular facts of that case. We do not believe it was held or intended that actual labor in Texas for the identical employer was prerequisite to acquisition by an employee of the status of a Texas employee, but that such status may be acquired by contract for work in Texas for a new employer, the employee then working in Texas at the same job for a different employer. The italicized portion of the quotation from the Volek Case may well be applied to the facts of this case. At the time Gallagher was employed by the Liberty Company he was one of "our own workmen." He was hired in Texas primarily and principally for the drilling of a deep oil well in Texas. Because the employer was not then ready to start drilling on the Texas well, the employee was put to work on the New Mexico well until the drilling started on the Texas well. We think Gallagher thereby became an employee in Texas under such contract of hiring. Texas Emp. Ins. Ass'n v. Volek, supra; Home Life & Accident Ins. Co. v. Orchard, supra.

If Gallagher occupied the status of a Texas employee, and was temporarily sent out of the state to perform labor for his employer and within a year from the time he left Texas sustained the injury complained of in the course of his employment, he is undoubtedly protected by the provisions of article 8306, § 19. It would not have been unreasonable for the jury to have concluded, from the facts surrounding Gallagher's employment, that it was contemplated by the employer and employee that the performance of services by the employee was to be chiefly in Texas, and that the work in New Mexico was intended merely to fill the hiatus between the time of Gallagher's employment and the beginning of work on the deep test in Pecos county, Tex., and that the New Mexico work was merely temporary. He was a Texas employee working in Texas when he made the contract of employment with the Liberty Company. Fidelity & Casualty Co. of New York v. McLaughlin, Tex. Civ.App., 106 S.W.2d 815; Maryland Cas. Co. v. Brown, Tex.Civ.App., 110 S.W.2d 130; Gulf Cas. Co. v. Fields, Tex.Civ.App., 107 S.W.2d 661; American Mut. Liability Ins. Co. v. McCaffrey, 5 Cir., 37 F.2d 870.

In Fidelity & Cas. Co. of New York v. McLaughlin, Tex.Civ.App., 106 S.W.2d 815, 817, the court said: "Assuming, there-

fore, that the appellee was employed by appellant in Texas to work on the job at New Iberia in Louisiana, but not shown to have been exclusively so, and that such employment was the laying of a pipe line and temporary in character, lasting from six weeks to two months, it is held that the cited statute was applicable and did entitle him to compensation under its provisions." (A writ of error was granted in said case upon an assignment that the jury's answers were conflicting.)

█ The only issue submitted to the jury with reference to the question discussed was special issue No. 1, which inquired, in substance, whether the contract of employment was entered into in Texas. Although there are many decisions that indicate, if they do not hold, that the fact that the contract is entered into within the state of Texas is the determining factor and brings such a contract within the provisions of article 8306, § 19, we think the decision in the Volek Case has determined that proposition to be incorrect. In the Volek Case, Justice Critz expressly stated that the fact that the contract was made in Texas was not the determining factor. In other words, the fact that the contract of employment was entered into in Texas did not determine whether the employee had obtained the status of a Texas employee. We conclude that the verdict in this respect is insufficient to support the judgment and the case must be reversed. The cause having been tried on the erroneous theory that the place where the contract was made determined the applicability of the extraterritorial provision of the statute, we think the cause should not be reversed and rendered, as contended by appellant, but should be, for the reason stated, reversed and remanded for another trial. Reed v. Benjamin State Bank, Tex. Civ.App., 114 S.W.2d 365; Associated Oil Co. v. Hart, Tex.Com.App., 277 S.W. 1043; Camden Fire Ins. Co. v. Yarbrough, Tex. Com.App., 215 S.W. 842; Williams v. Safety Cas. Co., Tex.Sup., 102 S.W.2d 178.

Since proceedings producing other questions presented will probably not occur upon another trial of the case, we deem it unnecessary to discuss them.

█ Gallagher contends that if the finding of the jury that the contract of employment was entered into in Texas is not sufficient to show his status as a Texas employee, so as to bring him within the provisions of article 8306, § 19, then the un-

disputed evidence with reference thereto shows he was such Texas employee of said company, and the judgment for that reason should be affirmed. We think this contention cannot be sustained. Plaintiff was the only witness. In Thraves v. Hooser, Tex. Com.App., 44 S.W.2d 916, 921, it was said: "The rule is now well settled in this state by the decisions of the Supreme Court that when a jury has been selected for the purpose of trying out the facts of a case, it matters not how positive and uncontradicted the testimony of an interested party may be; the question of his credibility must be submitted to the jury."

In Simmonds v. St. Louis, B. & M. Ry. Co., 127 Tex. 23, 91 S.W.2d 332, 333, it was said: "As to the testimony of interested witnesses, the general rule is that, while the jury has no right arbitrarily to disregard the positive testimony of unimpeached and uncontradicted witnesses, the mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury. Stated in another form, the rule is that the uncontradicted, uncorroborated testimony of a party to a suit will not authorize or support an instructed verdict."

(Italics in the opinion are ours.)

The judgment is reversed and the cause remanded.

FUNDERBURK, Justice (dissenting).

The question at issue may be said to be: Had Gallagher been hired in this state within the meaning of R.S.1925, art. 8306, § 19, as amended, Vernon's Ann.Civ.St. art. 8306, § 19? The pertinent language of the statute is "an employee, who has been hired in this State." The literal import of the language would appear to be that it refers to the place where the contract of hiring is made, thereby rendering the statute applicable if the place of making such contract was in Texas. But to give the language that construction would have the effect of making an arbitrary distinction between employees equally deserving of protection. Employers, particularly those near state boundary lines, wishing to avoid the provisions of the statute, could do so by the simple device of crossing over the line with applicants for employment and there making the contract. If an employer wrote to one in a distant state proposing a contract of hire which was accepted by letter, the contract would no doubt be consummated in

the foreign state and therefore not made in Texas. Other examples might be given to show how, without any reason to be found in the purposes of the workmen's compensation statutes, a harsh discrimination would result. A mere circumstance having no relation to the purposes of the act would have the effect of determining that some employees would come within the provisions of this statute while others would not. If the statute be susceptible to another construction not doing violence to its terms and yet avoiding such discrimination while effecting the general purposes of the law, such construction undoubtedly should be favored as expressing the legislative intention.

It is believed that the reference to a person as one "who has been hired in this state" may have regard to the service rather than the contract under which the service is performed. The statutory definition of "employee" very forcefully suggests that such is the meaning intended. " 'Employee,' " says the statute, "shall mean every person in the service of another under any contract of hire." R.S.1925, art. 8309, § 1. (There is more to the definition, but not material to the present study.) Clearly that definition makes a distinction between the "service" and the "contract of hire." Without the "service," although there be a contract of hire, the relation of employer and employee cannot exist under the express terms of the definition. The same is true of service without a contract of hire. It requires both service and a contract of hire to make an employee. The statute in question would seem to be susceptible to the construction that it applies to any one performing services (within the provisions of the workmen's compensation statutes) *in this state,* under a contract of hire (wherever made). Such a construction would appear to be in harmony with all other provisions of the compensation statutes and would work no such unreasonable hardship upon insurance carriers as would result from the construction of the statute given in the majority opinion, as will be noticed later.

Under this view, the question at issue may be said to be: Did Gallagher, the employee, under the contract of hiring perform any part of the services of his employment in this state before the time of his injury in New Mexico? The undisputed evidence leaves no uncertainty in the answer to that question. The evidence shows conclusively that the first service Gallagher performed under the contract of hire, made in Texas the day before, was at the well situated in the state of New Mexico. It is thought that a fair test of the applicability of the statute under consideration, and one which will give to employee the very maximum of rights which a liberal but fair construction of the statute may permit, would be whether there was any instant of time when, in this state, the employee, if injured, would have been protected, before his transfer to the foreign state for the continuation of services there under the same employment.

Some of the decisions seem to attach more or less importance to the fact of whether the work in the foreign state be of a permanent or temporary nature. That is believed to be important only, if at all, in determining whether the services in the other state constituted a continuation of an employment begun in Texas. Suppose an employer of one doing services in Texas, and while the relationship of employer and employee still exists, advises the employee that in a few days he will have no more work in Texas but can use his services indefinitely in a foreign state, and the employee, with no loss of his status as such, continues his services in such other state and is injured at the end of, say, eleven months. Can there be any doubt that he would have the option declared by the statute to claim compensation as an employee in this state? It is respectfully submitted that there is no suggestion in the statute of any limitation or qualification of such right as to the nature or time of employment save the twelve months limitation. So far as anything in the statute appears to the contrary, the protection of an employee performing services in Texas under a contract of hire is extended to services of the same employee for the same employer in another state for a period of twelve months very much analogous to the protection as security of a chattel mortgage upon property moved out of a county where the mortgage is registered, without consent of the mortgagee, for a period of three months. It would seem to be wholly immaterial that the employee may never have contemplated the performance of further services in Texas.

It is important to bear in mind that the relation of employer and employee is not necessarily conterminous with the contract of hire, which, with service thereunder,

constitutes such relation. The service may or may not begin with the contract of hire and may end before the contract ends. A, today, may contract with B for services to be performed tomorrow or next week. Under the definition of employee the status of B as employee does not arise until tomorrow or next week, and not even then unless he then begins his service. When the relation does come into existence, if it be in Texas, then a continuance of services under the same relationship in another state, under the same or a different contract of hire, will not operate for twelve months to deny the employee the same protection as if he had continued in Texas the services begun in Texas. Continuous employment may exist under different contracts of hire. It being humanly impossible for any one to perform services with no cessation, temporary and reasonable periods of cessation without intent to sever the relation of employer and employee does not have such effect. The nature of the services is not important, except, of course, it must involve an employment within the protection of the statute. Hence, by change of contract the character of the services may be changed without affecting the continuity of the employer-employee relationship.

Under this construction of the statute, in question, no importance can be attached to the fact that it may have been contemplated that after a period of service begun in New Mexico Gallagher was to be transferred for further employment in Texas. We may dismiss as unimportant the fact that there was no binding contract shown that Gallagher, after the work in New Mexico, was to have work on the Pecos well in Texas. There is little room to doubt that if the greatest possible effect be given the evidence in favor of Gallagher, his employer could have terminated the employment at any time without liability. But even if there was a contract which had the employer discharged the employee before he ever performed any services in Texas, would have given rise to a cause of action for damages, it would be nonetheless true that the employer-employee relation would have ceased before any services were ever performed under the contract of hire in Texas. All such service would have begun and ended in the state of New Mexico.

If this construction of the statute be not correct and it be conceded, as it is, that the mere situs of the contract of hire is immaterial, what is the fact, or what are the facts, determinative of the applicability of the statute to an employee injured in another state? Is it the place of residence of the employee? At least two good reasons suggest themselves why that should not be the test. First, there is nothing in the statute to warrant such construction. It would be a case of reading something into the statute not even remotely suggested by the terms of the statute. Secondly, the same arbitrary discrimination before noticed as between employees equally deserving of protection would result. It may be assumed that all along the state boundaries common to other states, laborers who are residents of the other states have regular employment in this state. If that employment carries them into another state and they are there injured, why should not they have the same protection as an employee who differs from them only in the circumstance that he happens to be a resident of Texas? While on their jobs in Texas they have the same protection as residents of the state. Why make a distinction when they are injured in the same employment outside of the state? The terms of the statute do not require such interpretation, and the one already suggested is far more reasonable and consonant with the purposes of the law.

Is the test previous employment in this state by other employers? The majority opinion seems to give some effect to the fact that Gallagher had previously been employed by others in this state. It was shown that some of Gallagher's fellow workmen on the well in New Mexico were residents of New Mexico. Suppose just previously they had worked for another employer in Texas. Would that have brought them within the provision of the statute in question? In the contract by which Gallagher was hired, let us suppose there had been no mention or discussion of prospective further work in Texas and that previously, although a resident of the state, Gallagher had had no employment in which, for accidental injuries, the law provides for compensation. Then it would seem that he, as a resident citizen, would have no protection against the injuries received in the other state, but the citizen of such other state would have, because he had previously worked at a particular kind of employment for another employer in Texas. It is wholly unreasonable, it would seem, to ascribe to the Legislature any such intention.

Now let us examine a little further the theory that Gallagher came within the provisions of the statute because when the contract of hiring was made it was contemplated that the work in New Mexico was to be temporary and thereafter he was to be longer or more steadily employed in similar work in Texas. Would both parties have to contemplate the same thing? Would the contemplation of a particular one or either be sufficient? How would the subject matter of what was contemplated be required to be evidenced—by the terms of the contract or by what both or either party had to say about it after a controversy arose? If by the terms of the contract, would it have to be an enforcible contract as to executory provisions thereof? If so, it would appear that few laborer's contracts would be enforcible.

It should be borne in mind that the employee is not, strictly speaking, a party to the contract of insurance. His rights in the contract arise by operation of the principle that a contract by two parties for the benefit of a third party may be enforced by the latter. It is elementary that the third person must take the contract as it is. No intention of his can have the effect to enlarge his rights or add to the obligations of the contracting parties. Neither, it is believed, could any mere intention of the third party and one, only, of the contracting parties have such effect. Is it reasonable that the obligations of the insurer are to be controlled by a mere matter of what may be contemplated between the other party to the contract and a third person? If so, it is believed that such an element of variableness and uncertainty regarding the risk insured against would result as of itself to condemn such a construction of the statute. If the statute be so construed as that its provisions will apply to services having their inception in other states where it is contemplated that afterward services are to be performed within the state, it would be impossible for an insurance carrier ever to determine adequate rates in advance or with any degree of safety. A Texas employer having employees all over the United States could render his Texas insurance carrier liable for accidents all over the United States simply upon proof that it was contemplated by the employer and employees that such foreign service was to be succeeded by more permanent service in Texas.

These considerations would seem to require a construction making the statute applicable only as to services begun in Texas and not applicable where the first services of an employee are begun in another state, and no part of which are ever performed within this state. This is believed to be in perfect accord with the decision in Texas Employers' Ins. Ass'n v. Volek, Tex.Com. App., 69 S.W.2d 33.