## MARYLAND CASUALTY COMPANY v. SID BROWN.

No. 7365. Decided April 6, 1938.
Rehearing overruled May 4, 1938.
(115 S. W., 2d Series, 394.)

*R. H. Mercer* and *Hayden C. Covington,* both of San Antonio, for plaintiff in error.

*Kazen & Kazen, Hicks, Dickson & Lange* and *James M. Williamson,* all of Laredo, for defendant in error.

MR. JUDGE GERMAN of the Commission of Appeals, delivered the opinion for the Court.

This is a compensation case. Defendant in error, Sid Brown, was the employee and will hereinafter be designated .plaintiff. Gateway Chevrolet Company of Laredo, Texas, was the employer. Plaintiff in error, Maryland Casualty Company, was the insurance carrier, and will be referred to herein as defendant.

Plaintiff was injured near the town of Nueva Laredo in the Republic of Mexico. The principal place of business of the Gateway Chevrolet Company was in Laredo, Texas. In the district court judgment was entered in favor of plaintiff, based upon a finding, among others, that he was injured while in the course of his employment. This judgment was affirmed by the Court of Civil Appeals. 110 S. W. (2d) 130.

1 The dominant question urged in the application for writ of error is whether or not an employee, who is hired within the State of Texas, and is injured while in the course of his employment within a foreign country, is entitled to compensation under the laws of this State. Our Compensation Law now provides as follows:

"If an employee, who has been hired in this State, sustain injury in the course of his employment he shall be entitled to compensation according to the Law of this State even though such injury was received outside of the State, and that such employee, though injured out of the State of Texas, shall be entitled to the same rights and remedies as if injured within the State of Texas." Article 8306, sec. 19, R. S. 1925, as amended by the Acts of 1931, 42d Leg. p. 133, ch. 90, sec. 1 (Vernon's Ann. Civ. St. art. 8306, sec. 19).

For the purposes of decision of this question, it must of course be assumed that the employee when injured was in the course of his employment.

By statute practically every state in the union has made provision for extension of the benefits of Compensation Laws to employees injured "outside the State;" but prior to such statutes, the courts had in many instances held that they so applied. We find that in at least three cases the courts have held that the effect of the extraterritorial provisions of such acts is to allow recovery of compensation to employees injured in the course of employment when the injury occurs in a foreign country. Saunders' Case, 126 Me. 144, 136 Atl. 722; Globe Cotton Oil Mills v. Industrial Accident Commission, 64 Calif. App. 307,

221 Pac. 658; Alaska Packers' Assn. v. Industrial Accident Commission, 1 Cal. (2d) 250, 34 Pac. (2d) 716, affirmed by Supreme Court in 294 U. S. 532, 55 Sup. Ct. 518, 79 L. Ed. 1044. See also Harvard Law Review, Vol. 31, page 619.

Aside from the plain purport of the words "outside the State," the reason for allowing compensation when the injury occurs outside the state and in a neighboring state applies with equal force if the injury occurs in a foreign jurisdiction. Even in cases where there was no express statutory provision providing compensation for injuries outside the state, the courts in many instances have given extraterritorial effect to the Compensation Laws, "upon the basic principle that the business or industry shall in the first instance pay for accidental injuries as a business expense or part of the cost of production; and, consequently, work done by an employee acting within the scope of his employment is presumably done to advance the business, although the work may be performed across the border of the state; and any accident suffered by him while so engaged should be compensated by the business, precisely the same as if it were performed within the state boundaries." This seems to be the justifying principle behind the statutes, but, strictly speaking, the basis of statutory regulation is the employer-employee status or relation created within the state. In the recent case of Alaska Packers' Association v. Industrial Accident Commission of California, supra, there is a learned and forceful discussion of the underlying principles governing in such legislation. In that case the provisions of the law of California were held to apply by virtue of the statute, although the injury occurred in Alaska, and the contract between the employer and the employee provided that the laws of Alaska would govern. Speaking of the employer-employee status, the court said:

"We are of the opinion that the creation of the status under the laws of this state is a sufficient jurisdictional basis for the regulation of that relationship within this state and the creation of incidents thereto which will be recognized within this state, even though the relation was entered into for purposes connected solely with the rendition of services in another state. If this were not so there could be no compensation for an injury arising out of and in course of the employment but occurring before the jurisdiction in which the services were to be performed had been entered, or where that jurisdiction had no compensation statute. This would seriously interfere with the policy of the act, which is to charge to the industry those losses which it should rightfully bear, and to provide for the employee

injured in the advancement of the interests of that industry, a certain and prompt recovery commensurate with his loss and, in so doing, lessen the burden of society to care for those whom industry has deprived, either temporarily or permanently, of the ability to care for themselves. Having a social interest in the existence within its borders of the employer-employee relationship, the state may, under its police power, impose reasonable regulations upon its creation in the state."

We are therefore of the opinion that by virtue of our statute, an injury "outside the State" is compensable, regardless of where it may occur, provided it is in the course of employment under a contract of hire made in this State.

**2** Plaintiff was hired in this State and the business of his employer was located in this State. Under the doctrine that the policy of the Compensation Law is to charge to the industry those losses which it should rightfully bear, it becomes at once obvious that, in a case of this kind, in order for an injury outside the state of the employment to be compensable, the contract of hiring, either by express terms or by implication, shall contemplate that work in furtherance of the business can or will be done in the foreign jurisdiction; or the employee must have been sent outside the state in furtherance of the business, or in the performing of his duties was required, by circumstances or conditions, to go beyond the boundaries of the state. Of course, the conduct of the parties after the employment is begun may be looked to and may be a strong factor in determining just what the real agreement contemplates.

**3** In this case it was alleged that plaintiff was not employed to do business in Mexico, and that he had instructions not to solicit business or to go into that country for the purpose of selling automobiles, or to go there on any other business of the employer. Among other special issues requested by defendant were the following:

"Do you find from a preponderance of the evidence that Sid Brown had instructions to not solicit business in the Republic of Mexico?" This was refused.

"Do you find from a preponderance of the evidence that Sid Brown was employed only for the purpose of soliciting business in Texas?" This was refused.

"Do you find from a preponderance of the evidence that Sid Brown had express instructions to not solicit business or go into the Republic of Mexico for the purpose of selling autos?" This was refused.

An affirmative answer to these questions would have shown that, even though plaintiff at the time of his injury may have been engaged in work relating to his employment, nevertheless he would have been acting beyond the scope of his employment, as this would have shown that he was not employed to do work in the Republic of Mexico. There was evidence raising these issues. It is our opinion, therefore, that one or more of them should have been given. Defendant specially pleaded that it was beyond the scope of plaintiff's employment to solicit business in Mexico, or to go into Mexico for the purpose of selling automobiles, and we think this was so nearly in the nature of a special defense that defendant had a right to have it affirmatively submitted. For this reason we do not think the matter was sufficiently covered by the general inquiry as to whether or not plaintiff was injured while in the course of his employment.

Defendant among other things pleaded that the employer had given positive instructions to its employees, including plaintiff, that no salesman should take any car belonging to the employer into Mexico for the purpose of demonstrating or soliciting business. At the time plaintiff was injured he was riding in a car belonging to the employed, and he claimed that he had gone to Mexico to solicit business. Defendant contended that the breach of these instructions precluded plaintiff from recovering compensation, and requested submission of the following special issue:

"Do you find from a preponderance of the evidence that Sid Brown did not have permission from his employer to take the car on the occasion in question into the Republic of Mexico for the purpose of demonstrating or soliciting prospects?"

4 The evidence tended to show that some months prior to the accident the employer had received a letter from officials in Mexico advising that if its salesmen, other than Mexican citizens, solicited business in that Republic they would be arrested, and the cars which they were driving would be "expropriated." The evidence further tended to show that in order to avoid loss of cars, the employer formulated rules intended to prohibit any salesman taking cars belonging to it across the river into Mexico. While it seems to be the rule that a violation of instructions of an employer by an employee will not destroy the right to compensation, if the instructions relate merely to the manner of doing work, yet it seems to be held by the weight of authority that violation of instructions which are intended to limit the scope of employment will prevent a recovery of compensation. In Schneider's Workmen's Compensation Law, Vol. 1, pp. 895-

896, it is said: "Injuries sustained in an automobile accident by an employee, who has been strictly forbidden to use the automobile in the carrying out of his duties, did not arise out of the employment." The author cites three cases, two of which are not available. There are however several English cases so holding. See Annotation in 83 A. L. R. 1218, 58 A. L. R. 202, and 23 A. L. R. 1176, under heading "Riding in Forbidden Conveyance."

In view of the probability of the confiscation of cars if used in Mexico, we are of the opinion that the instructions testified about, if actually made and in good faith enforced, would have the effect of limiting the scope of the employment of the salesman, and would be more than merely an attempt to regulate the manner of doing the work. While we think the special issue requested was perhaps properly refused because it assumed the existence of rules or instructions which prohibited the taking of the car to Mexico, yet in view of another trial we think this matter should be submitted to the jury, if again raised by the evidence. The proper method would apparently be to submit the question of whether or not such a rule existed, or such instructions had been given, and then submit the question of whether or not same had been violated. Of course such a rule could be waived by a sufficient disregard of same, with knowledge of the employer, and the issue of waiver should be submitted, if the testimony raises same, as it did on this trial.

There are numerous other errors in procedure raised by assignments, but we think in the event of another trial they can easily be avoided.

The judgments of the Court of Civil Appeals and of the district court are reversed and the cause is remanded.

Opinion adopted by the Supreme Court April 6, 1938.

Rehearing overruled May 4, 1938.