TEXAS EMPLOYERS' INSURANCE ASSOCIATION v. RAYMOND JAMES.

No. 7204.    Decided June 22, 1938.
(118 S. W., 2d Series, 293.)

W. O. Head, of Dallas, and Scarborough & Ely, of Abilene, for plaintiff in error Texas Employers' Insurance Association.

The plaintiff (James) having elected under the Workmen's Compensation Law of Texas, to pursue his remedy and having recovered under the laws of Pennsylvania, where he was injured, the requirements for an election under the law was met, and it was immaterial whether the recovery in Pennsylvania was a recovery in the "courts" of that state. Magnolia Pet. Co. v. Walker, 125 Texas 430, 83 S. W. (2d) 933; Texas Emp. Ins. Assn. v. Price, 300 S. W. 672; 1 Schneider on Workmen's Compensation (2d ed.), Sec. 47, p. 414.

Grisham Bros. and J. A. Lantz, both of Eastland, for defendant in error Raymond James.

Wood & Wood, of Austin, filed written argument as amicus curiae.

MR. JUDGE GERMAN, of the Commission of Appeals, delivered the opinion for the Court.

This suit was brought under the Compensation Laws of this State. The trial in the district court resulted in judgment in favor of plaintiff in error, the insurance carrier, notwithstanding the verdict of the jury, which, in some respects, was favorable to defendant in error, Raymond James, the compensation claimant. He will be referred to as plaintiff, and the Insurance Association will be designated defendant. The judgment of the trial court was reversed by the Court of Civil Appeals. 98 S. W. (2d) 425. A brief narrative statement will furnish background for discussion of the controlling legal question.

During June and July, 1930, plaintiff was an employee of the MacPherson Construction Company, a corporation having an office in Dallas, Texas, which was engaged in the business of laying pipe lines. He worked for said Company a short time as a tractor driver in Gaines and Andrews Counties, Texas. About the time the work there terminated, the foreman of MacPherson Construction Company spoke to him and other workers

about going to the State of Pennsylvania to engage in like work there. The Construction Company carried compensation insurance for the benefit of its Texas employees with the defendant Texas Employers' Insurance Association. The same Company was engaged in business in Pennsylvania, and in that State carried compensation insurance for its employees there with United States Fidelity & Guaranty Company. The employment for work in Texas was completely terminated about July 21, 1930. About the time same was ·completed, the MacPherson Construction Company, through its authorized foreman, made a contract with plaintiff to perform work for the Company in Pennsylvania. The jury found that the contract "for the performance of the work in Pennsylvania" was entered into between the parties in the State of Texas.

While the contract of employment was made in this State, the employment in fact did not begin until plaintiff reached the State of Pennsylvania, sometime about August 1, 1930. On August 11, 1930, while working for said MacPherson Construction Company in the State of Pennsylvania, and while in the course of his employment there, plaintiff received severe injuries, resulting in total permanent disability.

On September 22, 1930, plaintiff and the United States Fidelity & Guaranty Company entered into a written agreement upon forms furnished by the Workmen's Compensation Bureau of the Pennsylvania Department of Labor and Industry, which agreement is designated "Agreement for Compensation for Disability." This agreement shows MacPherson Construction Company of Philadelphia, Pennsylvania, as employer, Raymond E. James as employee, occupation as tractor driver, date of accident as August 11, 1930, the nature of the injury, and rate of compensation as $15.00 per week for an indefinite number of weeks beginning August 18, 1930. It appears that the rate of $15.00 per week was the rate applicable for total disability under the laws of Pennsylvania. This agreement was approved October 9, 1930, by "Bureau of Workmen's Compensation." Under this agreement, plaintiff received weekly compensation in the amount of $600.00, and until a lump sum settlement was made as hereinafter set out. United States Fidelity & Guaranty Company furnished plaintiff with hospitalization and medical treatment in Pennsylvania until about January 1, 1931, when he was sent to Dallas, Texas. He was there furnished lodging and hospitalization by said United States Fidelity & Guaranty Company until settlement was made. Shortly after reaching Dallas, plaintiff was approached by a firm of attorneys and he entered into an agreement with such attorneys to obtain a lump

sum settlement of his claim with the United States Fidelity & Guaranty Company. The attorneys apparently did not make much progress, and sometime in April or May, 1931, plaintiff called upon them with the demand that they get results or release him from his contract. Said attorneys then effected a settlement with the Unied States Fidelity & Guaranty Company for the sum of $1500.00, and plaintiff signed a "final settlement receipt" upon forms furnished by the Workmen's Compensation Bureau of the Pennsylvania Department of Labor and Industry. This showed plaintiff as employee, MacPherson Construction Company of Philadelphia, Pennsylvania, as employer, and the number of the compensation agreement which had been executed as above mentioned. This receipt recited payment of the total sum of $2100 in full and final settlement of compensation due under the Workmen's Compensation Law of Pennsylvania for the disability suffered by plaintiff. This settlement receipt was subject to review by the Workmen's Compensation Board.

Apparently the making of the agreement for compensation, as well as the final settlement, subject to review by the Workmen's Compensation Board, was authorized under the Compensation Laws of the State of Pennsylvania. However, as to the validity of same we are not concerned. For their services in making the settlement plaintiff paid the Dallas attorneys a fee, and there is nothing to show that they in any way represented either the United States Fidelity & Guaranty Company or MacPherson Construction Company.

In June, 1934, more than three and one-half years after his injury, plaintiff filed claim with the Industrial Accident Board of the State of Texas, claiming compensation for total disability as against defendant, the insurance carrier in Texas of the employees of MacPherson Construction Company. The theory of plaintiff appears to be that as the contract of hire was made between him and MacPherson Construction Company in the State of Texas, although for services to be performed wholly in the State of Pennsylvania, he became entitled to compensation under and in accordance with the laws of this State, and not under the laws of the State of Pennsylvania. His position appears further to be that the payment of compensation by the United States Fidelity & Guaranty Company as carrier of insurance in Pennsylvania was purely voluntary upon its part, it being under no legal obligation to make such payments,— plaintiff being under a contract of hire made in Texas,—and therefore the acceptance of those benefits in no way impaired his right to compensation from the Texas carrier under the laws of this State. He sought to excuse the great delay in filing claim

with the Industrial Accident Board in Texas by claiming that he was under the belief all the time that the United States Fidelity & Guaranty Company was the insurance carrier in Texas, and by claiming that he was advised by the Dallas attorneys that the settlement made with the United States Fidelity & Guaranty Company was a full, final and complete settlement for his disability, although not approved by the Industrial Accident Board of Texas, and that he remained under this impression until about June, 1934, when for the first time he was advised that his settlement was not valid, and that he was entitled to compensation under the laws of Texas, to be paid by the insurance carrier in this State.

Several interesting questions of law have been argued with much force. One proposition so urged is that as plaintiff had pursued his remedy for compensation under the laws of Pennsylvania, he had no right to claim compensation under the laws of Texas from the insurance carrier in this State. At the time plaintiff was injured the compensation law of this State provided as follows:

"If an employee who has been hired in this state sustain injury in the course of his employment, he shall be entitled to compensation according to the law of this state even though such injury was received outside of the state; * * * provided * * * that no recovery can be had by the injured employee hereunder in the event he has elected to pursue his remedy and recovers in the courts of the state where such injury occurred."

The Court of Civil Appeals was of the opinion that the Legislature intended for the injured employee who received an injury in another state to receive compensation under the laws of this State, even though he had been paid compensation in the state of his injury, unless he had resorted to a recovery in the *courts* of the state where the injury had occurred. Under the view we take of the matter, the question of election of remedies becomes of no consequence, as it is apparent, we think, that plaintiff when injured was not covered by the insurance carried by defendant upon the employees of MacPherson Construction Company in this State.

1 It appears to be the theory of plaintiff that the whole question turns upon the fact that the contract of hire was made in this State, although the employment was to be performed wholly in the State of Pennsylvania. In our opinion, the fact that the contract of hire may have been made in this State is not the

determining factor. Our law, so far as the provision above quoted is concerned, clearly contemplated that there should first exist the relation of employer and employee for services to be performed within this State, and that an injury in the course of that employment should be compensable under our laws although it may have occurred in another state. The primary purpose of our compensation laws was to govern Texas employers and protect Texas employees. The fact is that the employer-employee status or relationship within this State furnishes the jurisdictional basis for all extraterritorial provisions of the law. Maryland Casualty Co. v. Brown, 131 Texas 404, 115 S. W. (2d) 394.

2 We do not need to decide, and do not decide, the question of whether or not an employer in this State may make a contract with an employee to perform work wholly in another state, and by contract they may agree that the compensation laws of this State will exclusively govern in the matter of compensation for injuries. That is a highly debatable question, as it seems to be a rule of almost universal application that the several states possess the power to determine for themselves how injuries occurring within their respective jurisdictions shall be compensated. What we do decide is that our law, since the adoption of extraterritorial provisions, has clearly been intended to protect by such provisions employees engaged primarily in the service of an employer in this State, and who in the furtherance of the business in this State are sent to another state, or by circumstances and conditions are required to go beyond the boundaries of the state in the performance of their work or duties. Maryland Casualty Co. v. Brown, supra. While it may be true that our statute by implication might permit the parties to contract for services to be performed exclusively in another state, and to provide that the compensation laws of the state where the work is done should furnish the only means of compensation, which we do not decide, we hold that the statute, when read into the contract in this instance, does not have the force and effect of making the compensation laws of Texas applicable when the employment is wholly within another state and the injury occurs there.

In the case of Texas Employers' Insurance Assn. v. Volek, 69 S. W. (2d) 33, Justice CRITZ, speaking for the Commission of Appeals, said:

"The primary purpose of our Compensation Law is to protect our own workmen. The purpose of the extraterritorial provision is to protect, under our law, employees *who are such in*

*this state* under some contract of hiring, and who are incidentally or temporarily sent out of this state to perform labor or services." (Emphasis ours.)

This is in accord with decisions in many of the other states where the statutes are in substance the same as ours. It will be noted that the language of the provision in question is "If an *employee* who has been hired in this State," etc. Our statute defines an employee as "every person in the service of another under any contract of hire," etc. In this connection the language of the Supreme Court of Wisconsin in the case of Wandersee v. Moskewitz, 198 Wisc. 345, 223 N. W. 837, is peculiarly applicable. It is as follows:

"Our Compensation Act applies to employers and employees. They are both defined in the act. It is conceded that the employer here is under the act. It is plain that the applicant never was an employee within the meaning of the act, and that he never was under the act. As applicable to his situation, section 102.07 (4) Stats., defines an employee as 'Every person in the service of another under any contract of hire, express or implied, oral or written.' The purpose of this act was to regulate the relation of employer and employee in the state of Wisconsin. Therefore, to constitute a person an employee under the provisions of the act, such person must render service for another in the state of Wisconsin under a contract of hire, express or implied, oral or written. Until he performs services for another in the state of Wisconsin, he is not an employee. The terms of the act do not affect him, and he is not bound by it. As soon as he performs service for another in the state of Wisconsin under a contract of hire, then the act enters into and becomes a part of the contract, 'not as a covenant thereof, but to the extent that the law of the land is a part of every contract' (Anderson v. Miller Scrap Iron Co., 169 Wis. 106, 170 N. W. 275), and he is entitled to compensation under the act for injuries sustained while rendering service under the contract, whether it be within or without the state (Anderson v. Miller Scrap Iron Co., 169 Wis. 106, 170 N. W. 275, 171, N. W. 935; Zurich Accident & Liability Insurance Co. v. Industrial Commission, 193 Wis. 32, 213 N. W. 630). In this case the applicant performed no service for his employer in the state of Wisconsin. He therefore never became subject to the provisions of the act, and that act never became a part of his contract of employment."

The rule recognized in practically all states is "that the obligations created by the Workmen's Compensation Law are an integral part of the relation of employer and employee, and are

coterminous with the employment regulated by the state"; and that the application of the law "is not imposed upon the employer in connection with employment located outside the state." See particularly Cameron v. Ellis Construction Co., 252 N. Y. 394, 169 N. E. 622; American Mutual Liability Insurance Co. v. McCaffrey, 37 Fed. (2d) 870; Bock v. Frampton & Co., 105 Pa. Super. 380, 161 Atl. 762; Industrial Commission of Ohio v. Gardino, 119 Ohio St. 539, 164 N. E. 758, 82 A. L. R. 717; Watts v. Long, 116 Neb. 656, 218 N. W. 410, 59 A. L. R. 728.

If, then, the law does not of itself make an injury in another State, which is not incident to a business conducted in this State, compensable, it ought not to be held compensable unless the contract by its clearest terms should require it,—even if we should assume that such a contract is allowable. In the case of American Mutual Liability Insurance Co. v. McCaffrey, supra, a contract had been made in Tennessee by an employer engaged in business there with one of its employees to do work in Texas incident to the main business being conducted in Tennessee. The employee was injured in Texas and undertook to recover compensation under the laws of this State. Among other things the court used this language:

"On the other hand, where the contract of employment is clearly for services to be wholly performed in another state, it would be going very far to say that the Legislature even intended that its regulations should govern liabilities arising therefrom. The possibilities of conflict between the authority of the two sovereignties at once suggest themselves, to say nothing of the abuses that might arise if the national courts should uphold the contention that because the contract was made in one state it must be construed according to its laws, regardless of those of another where the work was to be done and the matters out of which the controversy arose occurred. The laws of one state might be more favorable to the employer, and, wishing to be governed thereby, it might engage all of its employees therein and send them to the other state, regardless of distances or initial expense. Then, when the time came to respond to the claims of an injured employee or his heirs, it would insist upon being sued where the contract was made, with all of the incidental expense and inconvenience, such as complying with the requirement in some states, as a condition precedent to filing a suit, of having the cause investigated and the rights of the parties determined by an administrative board or commission, the employment of counsel to bring suit, the attendance by the employee at the trial, the obtaining of his evidence, etc.,

all of which could be held to a minimum if the cause could be prosecuted in the immediate locality where the injury or death occurred."

3 When we look to the facts of the present case, we see that there never was any intention that plaintiff be compensated under the Texas laws for any injury which he might receive in Pennsylvania in due course of the employment there. Plaintiff had been working in Texas, and was under the protection of the Texas insurance carrier, until just before leaving for Pennsylvania. The employment in Texas was completely terminated. While the contract of hire for work in Pennsylvania was made in this State, the employment did not actually begin until after plaintiff reached Pennsylvania. The employer carried insurance on its employees in Pennsylvania with a different insurance company. Immediately after the injury, plaintiff and the Pennsylvania insurance carrier made agreement for compensation under and in accordance with the laws of Pennsylvania. This agreement was approved by the Workmen's Compensation Bureau of that state. It was signed by plaintiff, and he is presumed to have known its contents. The Insurance Company also rendered immediate hospitalization and medical service. All of these benefits continued for several months. Plaintiff was sent to Texas by the Pennsylvania insurance carrier, and benefits were continued here. After several months the parties made the lump sum settlement. Plaintiff seems to have acted under advice of his own attorneys. In all this we have a practical construction of the contract between the parties, which unerringly shows that they all intended by the arrangement entered into in Texas that plaintiff be considered an employee in Pennsylvania and entitled to the benefits and privileges of the Compensation Laws of that State.

It follows that as plaintiff was at the time of his injury not an employee of MacPherson Construction Company in Texas, and was therefore not a beneficiary under the contract of insurance carried by defendant on its Texas employees, he had no cause of action, and the trial court for this reason, if for no other, was justified in instructing a verdict for defendant.

The judgment of the Court of Civil Appeals is accordingly reversed and the judgment of the trial court is affirmed.

Opinion adopted by the Supreme Court June 22, 1938.