## ASSOCIATED INDEMNITY CORPORA-TION v. SCOTT.
### No. 8945.

Circuit Court of Appeals, Fifth Circuit.
Jan. 6, 1939.

On Rehearing April 14, 1939.

Sam Holliday, of Houston, Tex., for appellant.

Major T. Bell, of Beaumont, Tex., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was under the extra-territorial[1] provision of the Texas Workmen's Compensation Act, for disability and medical

---

[1] "If an employee, who has been hired in this State, sustain injury in the course of his employment he shall be entitled to compensation according to the Law of this State even though such injury was received outside of the State, and that such employee, though injured out of the State of Texas, shall be entitled to the

benefits. The claim was that, though injured in Louisiana, plaintiff was within the Texas Compensation statute, "an employee, who has been hired in this State."

The defenses were a general denial and special defenses; (1) that plaintiff was not injured under a contract of hire made in Texas, but under one made in Louisiana;[2] (2) that plaintiff had a remedy under Louisiana law to collect compensation from the Traders & General Insurance Company, the insurance carrier as to injuries in Louisiana; that he did receive payments from the Traders & General Insurance Company, and within the meaning of the Texas statute, he did thereby elect to pursue his remedy, and did recover, in Louisiana.

At the trial it was proven that plaintiff received his injury while working on an oil well at Ringgold, Louisiana, as an employee of H. J. DeArman, doing business under the name of H. J. DeArman Drilling Contractor, with his office in Houston, Texas. All of DeArman's prior drilling operations had been in Texas, and the job at Ringgold, on which plaintiff was hurt, was the only job DeArman had in Louisiana. He did not establish an office in that State for paying the men, or for doing any other character of business there. He did, however, have two policies of workmen's compensation insurance, one insuring his employees and work in Texas, with the Associated Indemnity Corporation, the other insuring employees and work done in Louisiana, with Traders & General Insurance Company. Both of these companies are Texas corporations, both have offices in Texas, the insurance in both companies was written in Texas. It was proven, too, that, as to the employment and services of his men, DeArman's method of conducting business was that each of them, except the drill pusher, were employed from job to job and from day to day, and when a particular job was finished, the payrolls would be closed, and the men would be off the payroll until another job was commenced, and they began work on it. Though, however, employees were not carried on the payroll between jobs, it was customary, if he was satisfied with the men on the job, for the tool pusher to speak to them while still at work about reporting to the next job for work, there, when it began. In such event, however, their employment, service, and pay would start not from the time of this arrangement, but from the time of their actually beginning work on the new job.

As to the plaintiff, it was shown that he had worked for DeArman for ten days on a drilling rig at Corpus Christi, Texas. That while at that job, and before August 10, when the well at Corpus Christi was abandoned, the foreman told him and other members of the crew that there would be another job for them at Ringgold, Louisiana, if they wanted it and asked them if they would like to work on it. Plaintiff and others agreed, and arrangements were made to notify plaintiff from Houston when the work would begin, and he was notified. Upon receipt of the notice he reported to Ringgold for work, and on August 14 was placed upon the payroll and went to work there. Between the shutting down of the Corpus Christi job and his reporting for the Ringgold job, he was not in the employ of the company, or upon its payroll. His reporting there had, however, been arranged for in Texas, and upon reporting he was placed at work. After working there for approximately forty days, he was on September 24, injured severely. Carried unconscious to a hospital in Shreveport, he remained there until March 9.

While he was in the hospital he received eighteen weekly checks of $20

---

same rights and remedies as if injured within the State of Texas. * * *

"Providing that such injury shall have occurred within one year from the date such injured employee leaves this State; and provided, further, that no recovery can be had by the injured employee hereunder in the event he has elected to pursue his remedy and recover in the state where such injury occurred." Texas Revised Statutes 1925, art. 8306, Sec. 19, as amended, Vernon's Ann.Civ.St.Tex. art. 8306, § 19.

[2] "For further answer herein defendant says that at the time of the accident complained of and at the time of plaintiff's injuries complained of plaintiff was working in the State of Louisiana under a contract of employment made in the State of Louisiana, and was not working or doing anything under any contract of hire made in the State of Texas; that plaintiff was not hired in Texas to do any work or anything in the State of Louisiana by his said employer but that any and all things that plaintiff was doing at the time he received his injuries were wholly under a contract of hire made in Louisiana." 3rd Paragraph Defendant's Original Answer.

from Traders & General Insurance Company, the Louisiana insurance carrier. It is appellant's claim that the receipt of these checks constituted an election and recovery under the Louisiana law, barring suits for compensation under the Texas law; appellee insists that there was neither election nor recovery, but merely weekly payments voluntarily made by the Traders & General, and received by plaintiff under the mistaken belief that these payments were being made under the Texas Compensation Law. These are the facts on the issue of election.

On September 28, DeArman's office in Houston filed notice with the Industrial Accident Board of the State of Texas, reporting plaintiff's injury, and advising that Traders & General Insurance Company had the Texas coverage. Though he later corrected this advice to the Board, he never advised plaintiff, or his brother and sister, who were acting for him, that the first report was a mistaken one.

On October 16, without any investigation by it, or any claim from or agreement with plaintiff, Traders & General mailed to DeArman, in Houston, a check for $20, drawn upon Traders & General Insurance Company at Dallas. This was sent to plaintiff, who forwarded it to his brother for deposit in the Bank at Sour Lake, where his brother worked, as he did the other weekly checks sent him thereafter. There was nothing in the check or in the correspondence to show that the check was sent under the Louisiana law.

On October 16 Traders & General wrote a letter about the medical bill, with copy to plaintiff in the hospital, in which it was stated that the company elected to be bound by the Louisiana law. On October 20 plaintiff's brother wrote him that he was entitled to $20 per week under the Texas law, and only $18 under the Louisiana law, and that they had better claim under Texas law. On October 22 plaintiff's brother wrote the Traders & General that he would not accept their statement that they would be governed by the law of Louisiana, but notwithstanding this letter, Traders & General continued until January 20, 1937, to send each week a check for $20.

In the meantime, plaintiff's sister filed claim for him under the Texas law, with the Texas Industrial Accident Board, and that Board duly notified defendant the Texas carrier, and in due course, and upon due notice, set the claim before it for hearing.

There is no testimony whatever that plaintiff knew that in taking the payments from Traders & General he was electing under the Louisiana law, or that he intended to do so. Everything in the case shows that he thought he was claiming and was receiving payments under the Texas Compensation law.

Plaintiff testified that he received the payments from that company, thinking it was the Texas carrier, that he never had any intention of claiming except under the Texas Compensation Act, and that he received such payments as he did receive under the belief that they were under that Act.

All of the correspondence and all of the testimony of plaintiff and his relatives is to the same effect, so that on the issue of election and recovery under the Texas statute the question on the record comes down to this; whether the receipt and retention of the payments without returning them to the Traders & General, was an election.

There was an issue too, on conflicting evidence, as to whether plaintiff's injuries were not confined to, and his compensation should not be limited to, that provided for, the loss of a particular member.

At the conclusion of all the evidence defendant filed a motion for a directed verdict, setting out as grounds for it—

(a) That there is no substantial evidence that L. A. Scott was employed in Texas, for the job in Louisiana on which he was injured.

(b) The evidence is undisputed that L. A. Scott received some compensation for his injuries received in Louisiana, from Traders & General Insurance Company, the insurance carrier of H. J. DeArman on the latter's Louisiana operations and that L. A. Scott elected to pursue his remedies in Louisiana and under Louisiana law.

The motion was made without prejudice to the right to have submitted to the jury issues (1) as to whether plaintiff was employed in Texas for the job at Ringgold, Louisiana, where he was injured, (2) in various forms, whether he elected to pursue his remedy under the Louisiana law, and (3) as to whether his injuries were confined solely to his right arm and hand,

and defendant, after its overruling requested this charge:

"If you find that after the completion of the job at Corpus Christi L. A. Scott was discharged as an employee of H. J. DeArman before going to Ringgold, Louisiana, and that there was no new contract of employment made in Texas, whereby he was employed for the job at Ringgold, Louisiana, you will return your verdict in favor of Associated Indemnity Corporation."

In addition it requested a number of special charges on the issue of election, an instruction that plaintiff could not recover for anything more than the loss of his arm and hand, and an instruction that if the jury found that his injury was only to his arm and hand, his recovery should be limited to the compensation provided for such specific members.

The court refused these requests, and allowed exceptions to them; but in his general charge, submitted to the jury fairly enough, if the evidence raised the issues: (1) whether plaintiff was employed in Texas for the work in Louisiana; (2) whether defendant had shown that plaintiff had elected his remedy in Louisiana and recovered under it within the meaning of the statute; (3) whether plaintiff's injuries were confined to the loss of his arm and hand, or he was otherwise injured so as to be totally incapacitated. There was a verdict and judgment for plaintiff for total, permanent incapacity.

Defendant has appealed, assigning error on the refusal of its request for a directed verdict, and of its special charges.

No exception was taken to, no error assigned on, the general charge. Here appellant's primary insistence is that it should have had a directed verdict, because upon the undisputed proof appellee did not make out a case within the extraterritorial provision of the Texas Workmen's Compensation Law.

It points out that by the undisputed proof, appellee was neither permanently nor generally in the employ of DeArman in the State of Texas; that he had merely been employed there for ten days on a particular job, which, when it ended, ended his connection with his employer. It argues that his tentative arrangement, made while on that job, to report to Louisiana for employment and service there was not any part of his employment and service in Texas, but separate and distinct from it, merely a provisional arrangement to accept employment and render service in Louisiana, if and when he should report there. It insists, therefore, citing Texas Employers' Insurance Ass'n v. James, Tex. Sup., 118 S.W.2d 293, that appellee was not within the extraterritorial provision one hired within the State of Texas, that is, one employed and serving there, who was doing work under that employment outside of the State.

Appellee does not at all deny that the facts are as appellant states them to be. He insists that under that state of facts, he was one employed within the state of Texas, that is, one employed and serving there, who at the time of his injury was doing work in Louisiana, under and in furtherance of the business which, as a Texas employee, he was hired to do. But he makes a further reply, that appellant cannot make the contention it makes here, that the engagement in Texas for work in Louisiana was not alone sufficient to support recovery, because it tried the case and requested instructed charges on the theory, that it was, and having done so, it cannot change its theory now.

On the issue of election appellant insists that without regard to the state of appellee's knowledge as to the true situation, and as to his rights under it, and without regard to his real intent to claim under the Texas law, the acceptance by appellee of payments from the Louisiana carrier and his failure to pay them back constitute, under the statute, an election and recovery under the Louisiana law.

In the alternative, it insists that at least, these facts made an issue, which it was entitled to have submitted in the words of its requested charges.

Upon the matter of disability, appellant insists that the evidence is without dispute, that appellee's disability was limited to the loss of his arm and hand; but if not, that the charge did not fairly submit the issue.

One of its assignments is aimed at the submission, over its objection, of the limitation section of the Louisiana law.

We need not consider or discuss in detail any of these claimed errors, except that directed to the failure to make out a case for extraterritorial coverage. We may say of the others generally that they are without merit. We think it perfectly clear that the facts not only do not establish, they completely and positively refute the idea that appellee elected under the Loui-

siana law, and that the question, whether he did or not, should not have been sent at all to the jury.

We think it equally clear that the issue of total and permanent disability was fairly submitted to the jury, and that the evidence supports its finding.

While the relevancy and materiality of the limitation section of the Louisiana statute is not made clear from the record, we think it plain that the record does not show any prejudicial error resulting from its admission, and that if it was erroneously admitted, which we do not decide, the error was harmless.

We turn then to the discussion of the questions on which this appeal must turn; (1) whether appellee's proof brought him within the extraterritorial provision of the Texas statute, as the statute is construed in Texas, Texas Employers' Insurance Ass'n v. James, supra, and (2) if it did not, whether appellant is prevented by anything it did below from now saying so.

A reading of the Texas decisions prior to that in the James Case leaves in no doubt that their general trend, if not their precise purport, was in the direction of the view that proof of the kind offered here would make out a case for the extraterritorial application of the statute.

On facts very much like those at bar the Courts of Civil Appeals generally in Texas had given the statute extraterritorial effect. Gulf Casualty Co. v. Fields, Tex. Civ.App., 107 S.W.2d 661; Texas Employers' Insurance Ass'n v. Price, Tex.Civ. App., 291 S.W. 287; Id., Tex.Civ.App., 300 S.W. 667; Norwich Union Indemnity Co. v. Wilson, Tex.Civ.App., 17 S.W.2d 68; Id., Tex.Civ.App., 43 S.W.2d 473; Texas Employers' Ins. Ass'n v. James, Tex.Sup., 118 S.W.2d 293; Southern Underwriters v. Gallagher, Tex.Civ.App., 116 S.W.2d 450; Texas Employers' Ins. Ass'n v. Volek, Tex.Civ.App., 44 S.W.2d 795; Maryland Casualty Co. v. Brown, Tex. Civ.App., 110 S.W.2d 130.

Of these cases application for writ of error was dismissed in the Fields and in the Price Cases. The opinions, as to extraterritoriality, in the Wilson, the Volek and the Brown Cases were approved by the Supreme Court in 67 S.W.2d 225, 69 S.W.2d 33, and 115 S.W.2d 394, respectively.

In the Wilson Case the Supreme Court expressly approved the holding of the Court of Civil Appeals. In the Volek Case not only was the opinion approved, but citing with approval Pettiti v. Pardy Construction Co., 103 Conn. 101, 130 A. 70, and declaring "Our Compensation Laws should be liberally construed in favor of the employee" the court held "the purpose of the extraterritorial provision is to protect, under our law, employees who are such in this state under some contract of hiring, and who are incidentally or temporarily sent out of this state to perform labor or services". 69 S.W.2d 35. And again "When the entire record of Frank Volek's employment is examined in the light of the above rule, we think it is fair to conclude therefrom that, while he occupied the status of an employee of Abercrombie Company in Texas, he was sent or induced by such company, through its duly authorized agent, to go temporarily to Louisiana to perform services for it."

In the Brown Case it was said:

"Plaintiff was hired in this state, and the business of his employer was located in this state. Under the doctrine that the policy of the Compensation Law is to charge to the industry those losses which it should rightfully bear, it becomes at once obvious that, in a case of this kind, in order for an injury outside the state of the employment to be compensable, the contract of hiring either by express terms or by implication, shall contemplate that work in furtherance of the business can or will be done in the foreign jurisdiction; or the employee must have been sent outside the state in furtherance of the business, or in the performing of his duty was required, by circumstances or conditions, to go beyond the boundaries of the state." 115 S.W.2d 396.

Then came the action of the Supreme Court in granting writs in the James and Gallagher Cases.

In Gallagher's Case there was a vigorous dissent in which the substance of the later opinion in the James Case was first set down. The Gallagher Case, though writ of error was granted in it with the notation "We are inclined to agree with the dissenting opinion," remains in the Supreme Court undecided. The James Case was, however, decided there on June 22, two weeks after the case at bar was tried below. It is upon the decision in the James Case that appellant relies for reversal here. It is the last and most authoritative expression of the Supreme

Court of Texas on the extra-territoriality under the Texas Workmen's Compensation Law. If its facts are the same as those before us, it is absolutely binding upon us, and, insofar as it deals with the principles upon which the decision of cases like this should turn, it is greatly persuasive, even though its facts may not be the same.

Because we are of the opinion that it is more restrictive of the statute than the earlier opinions are, and than we would independently have thought intended, and as to day to day employees, like oil field workers are, it practically deprives the Act of extraterritorial effect, we have given the facts of the James Case the most careful study to determine whether there are any significant differences which will leave us free to reach our own conclusions here. We have found none.

James, like Volek, and like appellee, had been working for his employer in Texas, on a day to day, job to job basis, just before leaving for work in another state. But there, as here, the employment and work in Texas was completely·terminated before the employee left the State. There, as here, the contract for the doing of the work in another state was made in Texas, and there, as here, the work or service for which he was employed did not actually begin until after plaintiff had reached the other state. In that case the court, citing with full approval Wandersee v. Moskewitz, 198 Wis. 345, 223 N.W. 837, which holds that it was not the contract within the state, but the performance of services there which creates an employer and employee relation as a basis for extra-territoriality, said—

"It appears to be the theory of plaintiff that the whole question turns upon the fact that the contract of hire was made in this State, although the employment was to be performed wholly in the State of Pennsylvania. In our opinion, the fact that the contract of hire may have been made in this State is not the determining factor. Our law, so far as the provision above quoted is concerned, clearly contemplated that there should first exist the relation of employer and employee for services to be performed within this State, and that an injury in the course of that employment should be compensable under our laws although it may have occurred in another state. The primary purpose of

compensation laws was to govern Texas employers, and protect Texas employees. The fact is that the employer-employee status or relationship within this State furnishes the jurisdictional basis for all extraterritorial provisions of the law. Maryland Casualty Co. v. Brown, Tex.Sup., 115 S.W.2d 394. * * *

"What we do decide is that our law, since the adoption of extraterritorial provisions, has clearly been intended to protect by such provisions employees engaged primarily in the service of an employer in this State, and who in the furtherance of the business in this State are sent to another state, or by circumstances and conditions are required to go beyond·the boundaries of the state in the performance of their work or duties. Maryland Casualty Co. v. Brown, supra. * * *

"We hold that the statute, when read into the contract in this instance, does not have the force and effect of making the compensation laws of Texas applicable when the employment is wholly within another state and the injury occurs there." 118 S.W.2d 295.

In the course of the opinion the Volek Case was approved, and especially this language in it—

"The primary purpose of our Compensation Law was to protect our own workmen. The purpose of the extraterritorial provision is to protect, under our law, employees who are such in this state under some contract of hiring, and who are incidentally or temporarily sent out of this state to perform labor or services."

Appellee insists that the Volek Case supports his recovery and that since it was approved in the James Case, the James Case must be considered to have turned on the facts present there, but not present here, that "immediately after the injury, plaintiff and the Pennsylvania insurance carrier made an agreement for compensation under and in accordance·with the laws of Pennsylvania," and later on plaintiff made a lump sum settlement with that carrier. Especially since the Court said in the opinion: "In all this we have a practical construction of the contract between the parties, which unerringly shows that they all intended by the arrangement entered into in Texas, that plaintiff be considered an employee in Pennsylvania and entitled to the benefits and privileges of the Compensation Laws of that State."

Appellant, on its part, insists that read in the light of the James Case, the important facts in the Volek Case, those on which it really turned, but which were not particularly emphasized in the opinion, are now given their true significance. These facts are not at all that Volek was engaged in Texas to take a job in Louisiana. They are (1) that the employer said "the rig is going to Louisiana, and we all had our same jobs there. He was talking to Frank Volek, Frank said he was going, and different ones named over who was going and who wasn't going, and he said: 'all right, all that is not going I will pay you all off here.' He wrote out checks for all that did not go, and he did not write checks for all that went" and (2) that "the record shows that he was allowed wages for the time he was traveling from his home at Damon, Tex., to the well in Louisiana."

Thus, in Volek's Case, says appellant, plaintiff continued to be a Texas employee and under the contract of employment made in Texas, went to Louisiana and continued the same services for the company there that he was engaged to perform in Texas. Retaining his status as a Texas employee, Volek, and the others who went with him, went to Louisiana for temporary employment there. Those who did not decide to go were dropped as employees, and in addition, Volek's pay commenced to run again in Texas when he started from his home there, for the Louisiana job. Thus, appellant argues, there is no conflict between the two cases, but correctly understood they hold the same, and under them appellee was not one who, in the service of his employer in Texas, was merely sent out of it to do work in another state in furtherance of the work or business for which he was employed in Texas.

We agree with appellant that this is the holding and effect of the James Case.

It remains only to consider whether there is anything in appellee's point that by taking the position it did below, that the determinative question in the case was whether appellee had, in fact, been employed in Texas to do work in Louisiana, appellant is prevented from urging here in reliance on the James Case, that that is not the material question; that the material question is whether his work in Louisiana was done under, and pursuant to, an employer-employee status of work and service existing in Texas, which the Louisiana work was incidental to and in furtherance of.

It may not be doubted that one having taken a position on the trial of a case, may not, on appeal, take a new and inconsistent one, especially where, if the position taken on appeal had been asserted below, something could have been done to meet it. St. Paul Fire & Marine Ins. Co. v. Kaufman Compress Co., 5 Cir., 93 F.2d 156; United States v. Atkinson, 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555. But neither may it be doubted that where, as here, the case below was tried, not upon any misapprehension of the facts, but upon a misapprehension of the effect of those facts in law, appellant may not be prevented from pressing here for the application, to the proven facts, of the correct principles of law. Especially may it not be where, as here, these principles seem to have undergone a change, or at least, to have been differently stated and applied since the trial of the case below. To hold otherwise would be contrary, we think, to the plainest principles of justice.

Though, therefore, we think it clear that appellant tried the case below under a misapprehension as to the state of the law, and therefore as to the inportance of particular facts, we think it equally clear that the misapprehension was a natural and reasonable one in which appellee shared, and such a one as did not result at all to appellee's prejudice.

Appellant may not therefore be prevented from arguing here for a correct result. Because however, the case was tried below before the James Case had been decided, and on an erroneous theory, c/f Southern Underwriters v. Gallagher, Tex.Civ.App., 116 S.W.2d 450, 456; Associated Oil Co. v. Hart, Tex.Com.App., 277 S.W. 1043, and it may be that on another trial additional evidence may be obtained, the judgment will be reversed, and remanded for trial anew in accordance herewith.

Reversed and remanded.

On Rehearing.

At a former day of this term we granted a rehearing in this case.[1] On the re-

---

[1] By the Court: "It having been called to our attention that the holding in Texas

Employers Insurance Ass'n v. James, Tex.Sup., 118 S.W.2d 293, on which we

210

hearing appellant insists that our judgment of reversal should stand.

In support of this insistence it urges upon us, that the opinion in Cason's case,[2] overruling the holding in James',[3] and reaffirming that in Volek's case,[4] does not change the law of Texas so as to render incorrect this Court's original holding on the facts before it, that Scott was not within the extra territorial provision of the statute.

In addition, it vigorously reargues, and insists that our judgment should stand upon the ground, that Scott made a binding election to take compensation under the Louisiana Act.

We agree with neither of these positions. In our former opinion,[5] which, except as modified by the overruling of the James case, and as stated in this opinion, stands, we said:

"A reading of the Texas decisions prior to that in the James Case leaves in no doubt that their general trend, if not their precise purport, was in the direction of the view that proof of the kind offered here would make out a case for the extraterritorial application of the statute. * * * It is upon the decision in the James Case that appellant relies for reversal here. It is the last and most authoritative expression of the Supreme Court of Texas on the extra-territoriality under the Texas Workmen's Compensation Law. If its facts are the same as those before us, it is absolutely binding upon us, and, insofar as it deals with the principles upon which the decision of cases like this should turn, it is greatly persuasive, even though its facts may not be the same.

"Because we are of the opinion that it is more restrictive of the statute than the earlier opinions are, and than we would independently have thought intended, and as to day to day employees, like oil field workers are, it practically deprives the Act of extraterritorial effect, we have given the facts of the James Case the most careful study to determine whether there are any significant differences which will

leave us free to reach our own conclusions here. We have found none."

 Of the opinion then that Scott was within the protection of both the letter and the spirit of the extraterritorial provision of the statute, we are of the same opinion still, and the barrier of the James case having fallen, we may and do give effect to our opinion, that he was.

On the other point appellant makes, Scott's election under the Louisiana law, we refer to and reaffirm what we have already said in our former opinion.

Our judgment of reversal and remand is therefore set aside, and the judgment of the Court below is in all respects, affirmed.

---

based our reversal of this case, and our refusal of motion for rehearing, has now been overruled, the order overruling the motion for rehearing is recalled and vacated.

"The motion for rehearing is granted and the cause ordered assigned for hearing on Monday, April 3, 1939."

[2] Travelers' Ins. Co. v. Cason, Tex.Sup., 124 S.W.2d 321.

[3] Texas Employers' Ins. Ass'n v. James, Tex.Sup., 118 S.W.2d 293.

[4] Texas Employers' Ins. Ass'n v. Volek, Tex.Com.App., 69 S.W.2d 33.

[5] 100 F.2d 797.